**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------- x

ALEJANDRO HUGGINS, on behalf of
himself and others similarly situated

               *Plaintiff, and Lead*
               *Plaintiff for the Proposed*
               *Class,*

v

CHESTNUT HOLDINGS OF NEW
YORK, INC.; 1425 U LLC; and
JONATHAN WIENER

               *Defendants*

-------------------------------------------------- x

Civil Action No. 18-001037-PAC

**SECOND AMENDED**
**FLSA COLLECTIVE ACTION and**
**RULE 23 CLASS ACTION**
**COMPLAINT**


**Jury Trial Demanded**

"Plaintiff" Alejandro Huggins, individually and on behalf of himself and all others similarly situated, alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff is a building superintendent who has worked for Defendants at various times between 2009 and the present. Throughout the course of his employment, Plaintiff regularly worked as many as seven days and well over 40 hours each week, including the requirement that he be on call 24 hours a day, seven days a week to deal with any issues that arose in residential multifamily properties owned by Defendants. Throughout the course of his employment, Defendants have denied Plaintiff minimum wage and/or overtime pay as required by state and federal law; failed to provide a required wage notice at the time Plaintiff was hired and annually, as required by law; and failed to provide a proper wage statement for each pay period, as required by law. Moreover, in retaliation for filing this lawsuit in February 2018, Defendants terminated Plaintiff's employment on May 11, 2018.

1

2.     This action is brought to recover unpaid minimum and overtime wages owed to Plaintiff and other similarly situated employees of Defendants, in addition to damages for Defendants' failure to provide required wage notices and statements, as well as injunctive and declaratory relief against Defendants' unlawful actions, and attorney fees' and costs.

3.     Plaintiff brings this action on behalf of himself and all similarly situated current and former employees pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and specifically the collective action provision of the FLSA, 20 U.S.C. § 216(b), to remedy violations of the wage and hour provisions of the FLSA by Defendants that have deprived Plaintiff and others similarly situated of their lawful wages.

4.     Plaintiff also brings this action on behalf of himself and a class of similarly situated current and former employees of Defendants, pursuant to Fed. R. Civ. P. 23, for violations of New York Labor Law ("NYLL") § 190, 195 and 12 N.Y. Comp. Codes R. & Regs. ("NYCRR") § 146-2.2 and 2.3.

5.     Plaintiff also brings this action under 29 U.S.C. § 215(a)(3) and the NYLL § 215 to remedy Defendants' retaliatory termination of his employment following the filing of this lawsuit, and seeks all damages available to him under 29 U.S.C.A. § 216(b) and NYLL § 215(2)(a), including but not limited to reinstatement, back pay, front pay, compensatory and punitive damages, as well as attorneys' fees and costs.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 as this action arises under 29 U.S.C. § 201 et seq.

7.     The Court's supplemental jurisdiction over Plaintiff's state law claims is invoked pursuant to 28 U.S.C. § 1367, which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts.

8.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C.§ 1391(b), as all actions comprising the claims for relief occurred within this judicial district.

9.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

10.     Plaintiff Alejandro Huggins is an adult individual who, at all times relevant to this Complaint, has been a resident of the State and City of New York.

11.     At all times relevant to this Complaint, Plaintiff was an employee of Defendants within the meaning of the FLSA, 29 USC § 203(e) and NYLL § 190(2).

12.     A written consent form for Plaintiff's consent to bring this action as a collective action under the FLSA has already been filed in this action.

13.     Defendant Chestnut Holdings of New York, Inc. ("Chestnut") is a domestic corporation organized under the laws of the State of New York, with a principal place of business at 5676 Riverdale Avenue, Suite 307, Bronx, NY 10471.  Chestnut is a family-owned real estate investment and property management firm that describes the company as having a long track record of successful, responsible and reliable management. Chestnut is a hands-on owner-manager that acquires, manages and improves multifamily properties throughout New York City. Chestnut purchased its first building in the Bronx in 1997. Since that time, it has come to acquire dozens more, and, upon information and belief, currently owns and manages more than 100 multifamily properties.

3

14.     Individual Defendant Jonathan Wiener is an adult individual who at all relevant times was and is the owner of Chestnut. Upon information and belief, Mr. Wiener directed various other individuals to create a policy of not paying superintendents properly, and to ensure the viability of that policy, Mr. Wiener also directed individuals to follow a policy of not providing notices as required under the Fair Labor Standards Act.

15.     In 2013, fed up tenants, supported by a coalition of community groups, marched to Defendant Wiener's home in the Riverdale section of the Bronx to deliver a handwritten letter demanding a meeting to discuss abhorrent conditions in buildings owned by Wiener, as well as harassment and retaliation by Chestnut.  *See* "Furious tenants storm Fieldston home of Jonathan Wiener, demanding a meeting and immediate repairs to litany of problems," New York Daily News, June 18, 2013 (available at http://www.nydailynews.com/new-york/bronx/furious-tenants-demonstrate-landlord-home-article-1.1375250).

16.     Defendant 1425 U LLC is a domestic company organized under the laws of the State of New York, with a principal place of business at 5676 Riverdale Avenue, Suite 307, Bronx, NY 10471.

17.     Upon information and belief, Chestnut is a real estate company that owns and manages multiunit residential apartment complexes throughout New York City.

18.     1425 U LLC is one such complex owned and managed by Chestnut.

19.     To maintain each residential complex, Chestnut employs a superintendent.

20.     Plaintiff was until recently the superintendent for 1425 U LLC, which is a residential complex located on 1425 University Place in the Bronx.

4

21.      Superintendents at each building are victims of egregious wage theft.  Throughout the course of each Superintendent's employment with Chestnut, Superintendents regularly work seven days a week, in excess of 40 hours per week, including the requirement that they be on call 24 hours a day, seven days a week to deal with any issues that arise in their respective work location, without receiving minimum wages and/or overtime pay as required by law.

22.      Upon information and belief, Plaintiff was employed in an enterprise that has employees selling, handling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce and has gross revenue of more than $500,000.

23.      Defendants own numerous other residential complexes in the City of New York, in addition to those at which the named Plaintiff worked.

24.      Upon information and belief, at all relevant times, Defendants jointly employed Plaintiff and had the power to hire and fire him, supervised and controlled his work schedules and the conditions of his employment, determined the rate and method of their payment, and maintained his employment records.

25.      Upon information and belief, Plaintiff worked in the premises and used equipment owned by different Defendants than those by whom they were formally controlled.

26.      Upon information and belief, Plaintiff performed a discrete job that is integral to all Defendants' businesses.

27.      Upon information and belief, Defendants share common labor policies and practices.

28.      Upon information and belief, at all times relevant to this Complaint, Defendants were employers of Plaintiff within the meaning of the FLSA, 29 USC § 203(d), and NYLL § 190(3).

5

## COLLECTIVE ACTION ALLEGATIONS

29.     Plaintiff brings his FLSA claims on behalf of himself and all similarly situated persons who work or have worked for Defendants as building superintendents at any point over the 3 years preceding the initial filing date of the Complaint in this case, February 6, 2018, and who did not receive minimum wages and/or overtime pay for all hours worked in excess of forty in the work week (the "Collective Class Members").

30.     Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff, and as such, notice should be sent to all others similarly situated. There are numerous similarly situated current and former employees of Defendants who have been similarly underpaid in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join.

31.     Another superintendent employed by Defendants Chestnut and Wiener has filed an individual action asserting nearly identical allegations as those contained herein. In Lopez v. Cora Realty Co. LLC et al., 18-cv-00746 (LTS) (BCM), Plaintiff Luis Lopez alleged that Defendants Chestnut and Wiener failed to pay him proper wages under state and federal law, and that he regularly worked 57 to 72 hours per week.

32.     Plaintiff has spoken to other superintendents in buildings owned by Chestnut and Weiner who complained of the same wage theft violations. A superintendent named "Jose" who works at 1414 Wythe Place in the Bronx (a building owned and managed by Defendants) told Plaintiff that he was not being paid enough for the hours he worked.

33.     Plaintiff heard the same complaint from a superintendent named "Edwin" who works at 1115 Jerome Ave in the Bronx, another building owned and managed by Defendants.

6

Case 1:18-cv-01037-PAC Document 31 Filed 06/26/18 Page 8 of 23

34. But since learning that Plaintiff was fired following the filing of this lawsuit, these other similarly situated superintendents are reluctant to be associated with Plaintiff out of fear that they too will lose their jobs and homes.

35. The vast majority of FLSA Collective Class members, including present and former employees over the relevant statutory period, are unknown, and information regarding the precise number of Collective Class members is in the sole control of Defendants. Upon information and belief, there are at least 50 FLSA Collective Class members, and could be significantly more.

## CLASS ACTION ALLEGATIONS

36. Plaintiff sues on his own behalf and on behalf of a class of persons under Fed. R. Civ. P. 23(a), (b)(3) ("Rule 23 Class"). As noted above, the persons in the Rule 23 Class are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and facts on which the calculation of that number can be based are presently within the sole control of Defendants, upon information and belief there are at least around 50 Class Members, and there could be significantly more.

37. There are questions of law and fact common to the Rule 23 Class Members that predominate over any questions affecting only individual members, including:

    a. Whether Defendants employed and/or jointly employed Plaintiff and putative Rule 23 Class Members under New York law;

    b. Whether Defendants paid Rule 23 Class Members lawful wages under the NYLL;

    c. Whether Defendants provided to their employees, at the time of each employee's hire and on or before February first of each subsequent year of that employee's employment, notices meeting the requirements outlined in NYLL § 195(1)(a); and

7

      d.    Whether Defendants provided to their employees, with each payment of wages and wage statements meeting the requirements outlined in NYLL § 195(3).

38.    The claims of representative parties are typical of the claims of the Class.

39.    The representative parties and their counsel will fairly and adequately protect the interests of the Class.

40.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation, where an individual plaintiff lacks the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

41.    Defendants have acted on grounds generally applicable to the Class, thereby making relief, including declaratory and/or injunctive relief, appropriate for the Class.

## PARTIES

## CLASSWIDE FACTUAL ALLEGATIONS

42.    Plaintiff brings FLSA and NYLL claims on behalf of himself and all similarly situated persons ("Class Members") employed by Defendants.

43.    Plaintiff was, at various times between 2009 and the present, employed as a building superintendent in buildings owned and/or operated by Defendants in New York.

44.    As the building superintendent, the job duties of the Plaintiff and those similarly situated ("Class Members") included, *inter alia,* collecting and taking out garbage on a daily basis, making minor apartment repairs including minor plumbing, flooring, roofing, and electrical work, maintaining building boilers, checking hallways for cleanliness and maintenance issues, and cleaning inside and outside the buildings.  Superintendents were also responsible for

snow removal and other cleaning and maintenance projects which were of a seasonal or more periodic (*i.e.*, not daily) frequency.

45.     All of the work that Plaintiff and proposed Class Members performed was assigned by Defendants and/or Defendants were aware of all the work performed by Plaintiff and Class Members, as well as hours that Plaintiff and Class Members worked.

46.     Plaintiff was on call 24 hours a day, seven days a week. Even when the Plaintiff was not actively working, he was nonetheless expected to be available to answer tenant calls and deal with any emergencies that arose. If at any point during the day or night he needed to leave the building premises, he was required to call his Field Managers to notify them that he was leaving and to inform them of who would be covering the building during his absence.

47.     When Plaintiff and Class Members accepted employment with Defendants, they were hired to work at fixed biweekly wage rates.

48.     At all relevant times, Defendants had the right to control, and did in fact control, the hours, hourly pay, assignments and schedules of the named Plaintiff and all superintendents working at the residential complexes Defendants own and/or manage.

49.     On information and belief, Defendants failed to pay Plaintiff and Class Members overtime wages at a rate of one and one-half times their regular rate of pay of hours worked in excess of 40 per work week.

50.     As described above, Defendants failed to pay the named Plaintiff and Class Members minimum wages as required by law and/or overtime wages at a rate of one and one-half times their regular pay of hours worked in excess of 40 per work week.

51.     At all relevant times, Defendants failed to keep complete and/or accurate records of the hours worked by and wages paid to the named Plaintiff.

52.     As part of their regular business practices, Defendants intentionally, willfully and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA and NYLL. This pattern or practice includes, but is not limited to:

    a.  Failing to record hours or to establish, maintain and preserve for not less than six years contemporaneous, true, and accurate payroll records;

    b.  Willfully failing to pay Plaintiff and Class Members required minimum wages and/or one and one half times their regular rate of pay for hours worked in excess of forty per work week;

    c.  Failing to provide Plaintiff and Class Members with a required wage notice either at the time they were hired or annually as required by NYLL § 195(1)(a); and

    d.  Failing to provide Plaintiff and Class Members with wage statements upon each payment of wages as required by NYLL § 195(3).

53.     At all relevant times, Defendants failed to post and/or keep posted a notice explaining employees' rights under the FLSA, in violation of 29 C.F.R. § 516.4.

54.     Upon information and belief, Defendants' unlawful conduct as described herein is pursuant to a policy or practice of attempting to minimize labor costs by violating the FLSA and NYLL. Defendants' unlawful conduct has been widespread, repeated, and consistent.

## INDIVIDUAL FACTUAL ALLEGATIONS

55.     Plaintiff Alejandro Huggins worked for Defendants from approximately August 2012 until he was fired on May 11, 2018.

56.     At all relevant times, Huggins was employed as a building superintendent at one of the many multifamily residential complexes owned and operated by the Defendants.  From

approximately 2012 until May 11, 2018, he was employed by Defendants at 1425 University Avenue in the Bronx, New York.

57.     As a condition of his employment, Plaintiff lived in the basement of 1425 University Avenue. He lived there for the primary purpose of being available to provide services on a 24-hour basis and would not live there but for the fact that he was required to be on site at all times to meet the requirements of his job.

58.     1425 University Avenue is a 55-unit building. Plaintiff was the only superintendent on site for the entire building.

59.     During his employment with Defendants, Plaintiff worked in excess of 40 hours per week.

60.     Throughout the employment, Plaintiff worked approximately eleven hours per day Monday through Friday.

61.     On Saturdays, he typically worked from 8:00 am to 1:00 pm.

62.     On Sundays, he typically worked from 8:00 am to 2:00 pm, and then from 4:00 pm to 7:00 pm.

63.     He worked anywhere from 55-70 hours per week.

64.     Over the course of his employment with Defendants, he was paid between $400 and $475 per week, regardless of how many hours he worked per week.

65.     On a routine day, Plaintiff performed the following daily duties: trash and recycling collection; sweeping and mopping all six floors of the building; window and surface cleaning; performing apartment maintenance; checking main boiler and water supply, and maintaining the exterior of the building.

66.     In addition to the daily duties, Defendants required Plaintiff to perform a host of other duties including: responding to emergency maintenance issues at the building; performing major repairs, renovations and cleanings at the building, including repairing flights of broken steps and cleaning the main boiler; providing access to the building to third-party/outside building service contractors; and snow removal.

67.     Additionally, Plaintiff was on-call 24 hours a day, seven days a week to attend to emergency repairs requested by tenants who occupied the building's 55 units.  When a tenant required an emergency repair, like a clogged toilet or a defective lock, the tenant would call Plaintiff's cell phone.  He conducted emergency repairs on a regular basis and did not receive any additional compensation for doing so.

68.     If for some reason he needed another person to cover for him, Plaintiff paid that person out of his own pocket, and was never reimbursed by Defendants.

69.     Despite complaining to supervisors, Plaintiff was never given time off except for two, two-week vacations over the course of his nearly six year employment period, with one of those vacations being cut short when Defendants summoned Plaintiff to return to attend to building maintenance and repair issues that Defendants deemed were an emergency and could only be addressed with Plaintiff returning from vacation.

70.     Following the commencement of this class action lawsuit, rather than increase Plaintiff's pay to comply with federal and state law, Defendants began taking a series of employment actions which amounted to retaliation, and ultimately terminated Plaintiff for asserting his right and in retaliation.

71.     First, Defendants immediately replaced Plaintiff's supervisor.  The new supervisor, Zohar Yaish, arrived at the building and introduced himself as Plaintiff's new

supervisor.  He also gave Plaintiff a new schedule, working from 8am – 6pm, with a mandatory

one hour lunch break, and forbid Plaintiff from working more than the 40 hours per week

prescribed by that schedule.   The new supervisor also assigned Plaintiff additional tasks, mostly

concerning additional cleaning of interior and exterior surfaces.

72.     Plaintiff was not able to attend to all of his duties within the prescribed schedule.

This resulted in a situation where the recycling and trash collection in the building began to get

backed up.

73.     On May 2, 2018, during a visit to the premises, Plaintiff's new supervisor, Mr.

Yaish commented on the piles of recycling and trash that was unsightly and needed to be

addressed.

74.     Plaintiff explained that this was the result of his reduced schedule.  Because he

had fewer hours to attend to all his duties, issues like a backup in the recycling and trash was

inevitable.

75.     The supervisor responded that he was changing Plaintiff's schedule from Monday

– Friday 8am – 5pm with a mandatory one-hour lunch, to Tuesday through Friday, 8am – 5pm

with a mandatory one hour lunch, plus working an additional 8 hours between Monday and

Sunday.  According to the Supervisor, by splitting the 8 hours usually worked on Monday over

two days (Sunday and Monday) the issue with the piling up of trash and recycling could be

addressed.

76.     Plaintiff explained that this would not address the issue.  As Defendants knew, he

needed to work more than 40 hours to get all of the work done.

77.     Following the encounter between Plaintiff and Mr.Yaish, Plaintiff reported the

issue to counsel.  Plaintiff's counsel immediately notified counsel for the Defendants that the

13

changes to Plaintiff's work schedule and the criticism of Plaintiff's work amounted to retaliatory actions against Plaintiff for filing this lawsuit.

78.     Plaintiff's counsel further informed Defendants' counsel that any further directives from the employer regarding the work schedule or duties should be made with the involvement of counsel and that Defendants should immediately provide a written notice of work schedule with assigned duties.

79.     Plaintiff's counsel noted that Plaintiff spoke Spanish only, his supervisor spoke English only, and that the communication gap was a further reason counsel must get involved. In this regard, Plaintiff's counsel noted that Plaintiff was being given written notices that were in English and not understandable to him.

80.     The same day Plaintiff's counsel had this communication with Defendants' counsel, Defendants gave Plaintiff an ultimatum.  He was ordered to work on Sunday on trash and recycling otherwise he would be fired.  In response, he asked for a written notice explaining what he was being ordered to do, and asked for time to consult with his attorney.  He was told he could have both of those things, but first had to state whether he would work Sunday.  The supervisor said if he would not commit to working Sunday he was fired.  Plaintiff reiterated that he wanted written notice of what he was being asked and that he wanted to consult with his attorney.  The supervisor then fired him.  This was on a Friday.

81.     That following Monday, Plaintiff's counsel contacted Defendants' counsel, explained the situation, and demanded that Defendants reinstate Plaintiff.

82.     Plaintiff's counsel indicated that if reinstated, Defendant would work on Sundays, and reiterated the demand that Defendants provide written notice of the work schedule and assigned job duties.

83.     Defendants' refused to reinstate Plaintiff.

84.     The reason Plaintiff was fired was because he brought this lawsuit and the reason they refuse to reinstate him is because they wanted to send a message to their other employees not to complain and assert their rights. Prior to being fired, Plaintiff was in regular contact with other similarly situated superintendents, including the aforementioned "Jose" and "Edwin," who worked for Defendants Chestnut and Weiner.

85.     Jose and Edwin reported to Plaintiff that they learned from their supervisors that Plaintiff had been fired. It appears that Defendants may have told the other superintendents that Plaintiff was fired to send a very specific message: do not assert your rights or you will be fired. Since Jose and Edwin learned of Plaintiff's termination, they both told Plaintiff that they no longer want to be involved with this lawsuit for fear of being fired.

86.     Defendants' retaliatory firing of Plaintiff has left him and his family in danger of losing his apartment, which he was provided as a condition of his employment. On May 15, 2018, Defendants, through their "Field Manager" Mr. Yaish, sent a letter to Plaintiff ordering him to vacate his apartment by May 29, 2018.

## FIRST CAUSE OF ACTION: FLSA MINIMUM WAGE

87.     Plaintiff alleges and incorporates by reference the allegations contained in all preceding paragraphs.

88.     Defendants have engaged in a widespread pattern and practice of violating the FLSA, as detailed in this Complaint.

89.     Plaintiff consents to be a party to this action, pursuant to 29 U.S.C § 216(b).

90.     At all times relevant to this action, Plaintiff and Class Members were employed by Defendants within the meaning of the FLSA, 29 U.S.C. § 203(d)

15

91.     At all times relevant to this action, Plaintiff and Class Members were engaged in commerce and the corporate Defendants were enterprises engaged in commerce within the meaning of 29 U.S.C. § § 206(A) and 207(a).

92.     Defendants violated the rights of Plaintiff and Class Members by failing to pay them the minimum wage for each hour worked in each discrete work week, in violation of the FLSA, 29 U.S.C § 206(a)(1).

93.     Defendants failure to pay Plaintiff and Class Members the minimum wage was willful within the meaning of the FLSA, 29 U.S.C. § 255.

94.     Defendants are liable to Plaintiff and Class Members for their unpaid minimum wages, plus an additional equal amount as liquidated damages, reasonable attorney's fees and costs, and any other appropriate relief pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION: FLSA OVERTIME

95.     Plaintiff alleges and incorporates by reference the allegations contained in all preceding paragraphs.

96.     Defendants violated the rights of Plaintiff and Class Members by failing to pay overtime compensation at a rate not less than one and one-half times the regular rate of pay for each hour worked in excess of 40 per week, in violation of the FLSA, 29 U.S.C. § 207(a)(1).

97.     Defendants' failure to pay Plaintiff and Class Members overtime compensation was willful within the meaning of the FLSA, 29 U.S.C § 255.

98.     Defendants are liable to Plaintiff and Class Members for their unpaid overtime compensation, plus an additional equal amount as liquidated damages, reasonable attorney's fees and costs, and any other appropriate relief pursuant to 29 U.S.C. § 216(b).

## THIRD CAUSE OF ACTION: NYLL MINIMUM WAGE

99.     Plaintiff alleges and incorporates by reference the allegations contained in the preceding paragraphs.

100.     Defendants violated the rights of Plaintiffs and Class Members by failing to pay them the minimum wage for each hour worked in violation of the NYLL.

101.     As a result of Defendants' violation of the NYLL, Plaintiff and Class Members are entitled to the minimum rate of pay that they were legally due under the NYLL's minimum wage provisions as well as liquidated damages, interest, attorney's fees.

## FOURTH CAUSE OF ACTION: NYLL OVERTIME

102.     Plaintiff alleges and incorporates by reference the allegations contained in the preceding paragraphs.

103.     NYLL § 160 requires employers to compensate their employees at a rate not less than one-and-one-half times their regular rate of pay for any hours worked in excess of 40 per week.

104.     Plaintiff and Class Members were required to work in excess of 40 hours per week without being compensated for those hours at the statutorily required rate.

105.     Defendants' violation was willful and lasted for the duration of all relevant time periods.

106.     Defendants are therefore liable to Plaintiffs and Class Members for their unpaid overtime compensation, plus liquidated damages, reasonable attorneys' fees and costs, and any other appropriate relief.

## FIFTH CAUSE OF ACTION: NYLL ANNUAL NOTICE

107.    Plaintiff alleges and incorporates by reference the allegations contained in all preceding paragraphs.

108.    Pursuant to NYLL 195(1)(a), every employer is required to

provide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, and on or before February first of each subsequent year of the employee's employment with the employer, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one if this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

109.    Defendants knowingly failed to comply with this provision by failing to provide Plaintiff and Class Members with any kind of notice at the time of hiring or annually, whatsoever, let alone a notice meeting the requirements laid out in Section 195(1)(a).

110.    NYLL § 198(1)(b) provides that any employee not provided such notice may collect damages for $50 for each work day that the violation occurred or continued to occur, up to a total of $5,000 per employee (together with costs and reasonable attorneys' fees as well as appropriate injunctive and/or declaratory relief).

111.    During the course of Plaintiff and Class Members' employment, Defendants consistently and willfully failed to provide them with adequate annual notices as required by New York law.

112.    Defendants are therefore liable to Plaintiff and Class Members in the amount of $5,000 per employee, plus reasonable attorney's fees and costs, and any other relief appropriate pursuant to NYLL § 198.

## SIXTH CAUSE OF ACTION: NYLL WAGE STATEMENTS

113.    Plaintiff alleges and incorporates by reference the allegations contained in all preceding paragraphs.

114.    Pursuant to NYLL § 195(3), every employer is required to

furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances; if any, claimed as part of the minimum wage; and net wages.

115.    Defendants knowingly failed to comply with this provision by failing to provide Plaintiff and Class Members with wage statements meeting the requirements laid out in ¶ 105.

116.    NYLL § 198(1)(d) provides that any employee not provided appropriate wage statements may collect damage of $250 for each work day that the violation occurred or continued to occur, up to a total of $5,000 per employee (together with costs and reasonable attorneys' fees as well as appropriate injunctive and/or declaratory relief).

117.    During the course of Plaintiff and Class Members' employment, Defendants consistently and willfully failed to provide them with adequate wage statements as required by New York law.

118.    Defendants are therefore liable to Plaintiff and Class Members in the amount of $5,000 per employee, plus reasonable attorney's fees and costs and any other relief appropriate pursuant to NYLL § 198.

## SEVENTH CAUSE OF ACTION: FLSA RETALIATION

119.    Plaintiff alleges and incorporates by reference the allegations contained in all preceding paragraphs.

120.    Defendants violated 29 U.S.C. § 215(a)(3) when they terminated Plaintiff's employment in retaliation for his initiation of this lawsuit.

121.    Defendants are therefore liable to Plaintiff for damages under 29 U.S.C. § 216(b).

## EIGHTH CAUSE OF ACTION: NYLL RETALIATION

122.    Plaintiff alleges and incorporates by reference the allegations contained in all preceding paragraphs.

123.    Defendants violated the NYLL § 215(a)(3) when they terminated Plaintiff's employment in retaliation for his initiation of this lawsuit.

124.    Defendants are there for liable to Plaintiff for damages under NYLL § 215(2)(a).

125.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for the following relief:

a.  That, at the earliest possible time, Plaintiff through their counsel be permitted to give notice of this collective action, or that the Court issue such notice of this collective action, or that the Court issue such notice to all persons who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of the Court's issuance of court-supervised notice, been employed by Defendants. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper hourly compensation and overtime wages;

b.  Certification of this case as a class action pursuant to Fed. R. Civ. P. 23;

c.  Certification of this case as a collective action pursuant to 29 U.S.C. § 216(b);

d.  Designation of the named Plaintiff Alejandro Huggins as class representative and designation of Mr. Huggins's counsel of record as class counsel;

e.  Unpaid wages, back pay, front pay, compensatory damages, punitive damages, attorneys' fees, costs, and interest pursuant to 29 U.S.C. § 201 *et seq.* and the NYLL § § 190 and 215(2)(a)*;*

f.  An additional and equal amount in unpaid wages as liquidated damages pursuant to 29 U.S.C. § 201 *et seq.;*

g.  Statutory damages pursuant to NYLL § 198(1)(b) and (d); and

h.  Issuance of a declaratory judgement that the practices complained of herein are unlawful under the FLSA and NYLL and a permanent injunction against Defendants' continued engagement in such practices.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to FRCP 38(b), Plaintiff demands a trial by jury on all question of fact raised by the Complaint.

Dated: New York, New York
       June 18, 2018

**BERANBAUM MENKEN LLP**

By:  */s/Bruce E. Menken*
     Bruce E. Menken
     Scott Simpson
     80 Pine St., 33rd Fl.
     New York, NY 1005
     (212) 509-1616
     bmenken@nyemployeelaw.com

**LAW OFFICE OF MOHAMMED GANGAT**
Mohammed Gangat, Esq.
675 3rd Avenue
Suite 1810
(718) 669-0714
mgangat@gangatllc.com

*Attorneys for Plaintiff Alejandro Huggins and the Rule 23*
*Proposed Class and FLSA Proposed Collective*