UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/25/19

------------------------------------------------------------X
ALEJANDRO HUGGINS, on behalf of
himself and others similarly situated,

    *Plaintiffs*,

-*against*-

CHESTNUT HOLDINGS INC.; 1425 U
LLC; and JONATHAN WIENER,

    *Defendants*.
------------------------------------------------------------X

18 Civ. 1037 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Alejandro Huggins moves the Court to compel Defendants Chestnut Holdings Inc., 1425 U LLC, and Jonathan Weiner (collectively, "Defendants") to produce collective-wide discovery and discovery relating to Defendants' alleged status as joint-employers. Plaintiff's motion to compel is GRANTED as MODIFIED, as detailed below.

## BACKGROUND

Plaintiff brings this collective action lawsuit against Chestnut Holdings Inc. ("Chestnut Holdings"), 1425 U LLC, and Jonathan Weiner (collectively "Defendants") on behalf of himself and others similarly situated alleging minimum wage, overtime and lack of notices, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, the New York Labor Law ("NYLL") §§ 190, 195, and 12 N.Y. Comp. Codes R. & Regs. ("NYCRR") §§ 146-2.2 and 2.3. According to the Second Amended Complaint, Plaintiff is a former building superintendent of 1425 U LLC, a residential complex located at 1425 University Place in the Bronx, New York. Dkt. 31, ¶ 20. Defendant Chestnut Holdings, owned by Defendant Jonathan Weiner, is a real estate investment

and property management firm that manages more than 100 multifamily properties in New York City and its surrounding area, including 1425 U LLC. *Id.* ¶¶ 13-14. Plaintiff alleges that Chestnut Holdings is a "hands-on owner-manager" of the properties it manages, and that accordingly, Weiner and Chestnut Holdings were his joint-employers when he worked as the building superintendent of 1425 U LLC. *Id.* ¶ 24. Plaintiff further alleges, *inter alia*, that Weiner "directed various other individuals to create a policy" across the properties Chestnut Holdings owns and/or manages, "of not paying superintendents properly . . . [and] not providing notices as required under the Fair Labor Standards Act." *Id.* ¶ 14.

The Court held an initial pretrial conference on September 11, 2018. In advance of the conference, Plaintiff proposed a two-phased discovery plan. *See* Joint Letter, Dkt. 34, at 1-2. The first phase would focus on discovery relating to his anticipated motion for conditional certification as a collective action; and the second on discovery regarding either Plaintiff's individual claims or, if the Court grants the motion for collective action, discovery concerning the collective class members' claims and Plaintiff's individual retaliation claim. *Id.* Defendants objected to "phased discovery." *Id.* at 2.

At the conference, Plaintiffs argued that phased, partially expedited discovery was necessary in this case because Defendants were refusing to sign a tolling agreement.[1] The Court made a distinction between phased discovery and bifurcated discovery, and declined to bifurcate discovery. *See* 9/11/18 Conference Transcript ("Conf. Transcript") at 10.[2] Instead, the parties were ordered to engage in a period of discovery focused on Plaintiff's anticipated motion for conditional

---

[1] Under the FLSA, aggrieved employees must file suit "within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. §255. New York law, however, has a six-year statute of limitations for wage claims. *See* N.Y. LAB. LAW § 198 (3).

[2] The transcript of the initial pretrial conference was provided to the Court upon request and is not docketed.

2

certification as a collective action, which, depending on what that discovery revealed, would then be followed by more extensive discovery on the merits. The Court entered a Civil Case Management Plan and Scheduling Order ("CCMP") reflecting that ruling. Dkt. 35. Under the CCMP, fact discovery was scheduled to close on January 7, 2019. *Id.* at 3.

Beginning in September, 2018, the parties engaged in limited discovery, including interrogatories and requests for production. Simpson Decl., Dkt. 43, ¶ 4. Defendants, however, refused to produce any of the proposed collective action discovery, including the names, addresses, and dates of employment for superintendents employed by any Defendant, and discovery requests relating to whether they jointly employed Plaintiff, an allegation they contest. *See* First Letter Motion, Dkt. 37. The parties held two telephonic meet and confer sessions in good faith on November 2, 2018 and November 7, 2018, but were unable to resolve Defendant's objections. Simpson Decl., ¶ 8. The instant motion followed. Dkt. 42.

## I. Legal Standard

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "This rule is liberally construed and is necessarily broad in scope." *MacCartney v. O'Dell*, No. 14-CV-3925 (NSR), 2018 WL 5023947, at *2 (S.D.N.Y. Oct. 17, 2018). "A request for discovery is considered relevant if there is a possibility that the information sought may have a bearing on any party's claim or defense. *Id.* (internal quotation omitted). "Relevance is a matter of degree, and the standard is applied more liberally in discovery than it is at trial." *Vaigasi v. Solow Mgmt. Corp.*, No. 11 CIV 5088 (RMB) (HBP), 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016). Still, even relevant information sought must be "reasonably proportional to the value of the requested information, the needs of the case, and the parties' resources." *Chen-Oster v. Goldman, Sachs &*

*Co.*, 293 F.R.D. 557, 562 (S.D.N.Y. 2013) (internal citation omitted). "Under Federal Rule of Civil Procedure 1, both parties are obliged to pursue discovery within the limits of Rule 26(b)(1) and in a manner designed to result in a speedy resolution with as minimal costs as possible." *99 Wall Dev. Inc. v. Allied World Specialty Ins. Co.*, No. 18-CV-126 (RA) (KHP), 2019 WL 2482356, at *2 (S.D.N.Y. June 14, 2019).

A party may move for an order compelling disclosure or discovery after conferring in good faith with opposing counsel, where, *inter alia*, an opposing party fails to make a disclosure required by Fed. R. Civ. P. 26(a), answer an interrogatory submitted under Fed. R. Civ. P. 33, or produce or permit inspection of documents under Fed. R. Civ. P. 34. *See* Fed. R. Civ. P. 37(a). Motions to compel made pursuant to Rule 37 are "entrusted to the sound discretion of the district court." *United States v. Sanders*, 211 F.3d 711, 720 (2d Cir. 2000).

## II. Analysis

### A. Joint-Employer Discovery

A central question here is whether all three Defendants constitute Plaintiff's "joint-employers" under the FLSA. *See generally Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 71 (2d Cir. 2003); *Jean-Louis v. Metro. Cable Commc'ns, Inc.*, 838 F. Supp. 2d 111, 122 (S.D.N.Y. 2011). Plaintiff believes there is "already enough evidence" to show that all three Defendants jointly employed Plaintiff.[3] Pl.'s Mem., Dkt.44, at 10. Defendants, however, dispute this classification as to Chestnut Holdings, arguing that as a property management firm, Chestnut Holdings operates more like an "outsourced human resources department," Def. Opp., Dkt. 46, at 2, which "provides

---

[3] Plaintiff submits various documents supporting this assertion, including: (1) an email from Chestnut Holdings' "Managing Field Director," stating "Mr. Huggins is currently employed with us"; (2) disciplinary reports sent to Plaintiff from Chestnut Holdings staff; (3) maintenance logs completed by residents of 1425 University Avenue, which are printed on Chestnut letterhead; and (4) memos regarding payroll changes and tax forms, which came on Chestnut letterhead, and addressed "[t]o all employees." *See* Simpson Decl., Exs. 2, 3, 4, 8 and 10-11.

4

human resources support for many of its clients, [but] does not directly employ these clients' employees." *Id.*

Resolution of this joint-employer issue will have a critical impact on the scope of this litigation, as well as its viability as a collective action. Chestnut Holdings manages more than 100 properties. Should the Court find that Chestnut Holdings "employs" the superintendents at all of the buildings it owns and/or manages, the scope of similarly situated potential plaintiffs in this action will be much broader. Notwithstanding the significance of this issue, Defendants object to the following joint-employer discovery requests:

### *Requests for Production*

**21.** "All documents reflecting, referring to, relating to, or setting out all current and past owners, officers, and/or shareholders of each Defendant."

**22.** "All documents reflecting, referring or relating to the relationship between Defendants, including but not limited to corporate bylaws, corporate minutes, shareholder agreements, transfer documents regarding transactions between the defendants, or contracts entered into between defendants reflecting an agreement to manage buildings."

**23.** "All documents referring, reflecting, or relating to each Defendant's individual, organizational, and/or management structures."

**24.** "All documents referring, reflecting, or relating to the number and/or addresses of all buildings owned and/or managed by each of the Defendants."

**25.** "All documents referring, reflecting, or relating to the sale of any building owned and/or managed by any Defendant during the relevant time period."

**26.** "All agreements and all other documents that set out the terms and conditions of, reflect, refer, or relate to the relationship between or among Defendants."

### *Interrogatories*

**1.** "Identify all owners, officers, and/or shareholders of each Defendant during the relevant time period."

**8.** "Describe the documents that establish the relationship between Defendant 1425 U LLC and Defendant Chestnut Holdings, and include the location of those documents and the custodian of those documents."

Simpson Decl., Dkt. 43, Ex. 1 at 1-8.

Defendants oppose these requests on the grounds that a large collective action would greatly enhance Plaintiff's ability to bargain. Further, the requests are "not reasonably calculated to lead to the discovery of admissible evidence and [] not proportional to the needs of this case." Def. Opp. at 4; *see also Lapointe v. Target Corp.*, No. 16-CV-216 (GTS/CFH), 2017 WL 3288506, at *3 (N.D.N.Y. Mar. 24, 2017). Defendants also contend these requests are unnecessary given Plaintiff's representation that "there is already significant evidence that Defendants jointly employed Plaintiff." Pl.'s Mem. at 9.

Defendants' generalized objection to joint-employer discovery is overruled. Defendants cannot maintain that they are not a joint-employer while simultaneously refusing to produce discovery that permits the allegation to be proven or disproven with legal certainty. The Court agrees, however, that some of Plaintiff's joint-employer requests need modification. Specifically, Request for Production ("RFP") # 21 and RFP # 24 are overbroad and vague. As written, they appear to require Defendants to produce *any* document that makes *any* reference to "current and past owners, officers, and/or shareholders of each Defendant" or "the number and/or addresses of all buildings owned and/or managed by each of the Defendants," which could include any piece of mail addressed to these individuals or buildings. At this pre-collective action certification stage, RFP # 21 and # 24 are better suited as interrogatories. *See Rahman v. Smith & Wollensky Rest. Grp., Inc.*, No. 06 CIV 6198 (LAK) (JCF), 2007 WL 1521117, at *9 (S.D.N.Y. May 24, 2007).

Accordingly, Defendant's objections to RFPs # 22, # 23, # 25 and # 26 and Interrogatories # 1 and # 8 are overruled. Since RFP # 21, converted into an interrogatory, is Interrogatory # 1, the Court removes RFP # 21 in its entirety from Defendants' discovery obligations at this time. As for RFP # 24, Plaintiff may keep this request only if converted into an interrogatory which asks

Defendants to "state the number and/or addresses of all buildings owned and/or managed by each of the Defendants during the relevant time period." Defendants are ORDERED to produce responses to Plaintiff's above-listed joint-employer discovery requests as modified.

### B. Collective-wide Discovery

Defendants also object to Plaintiffs' request for collective-wide discovery on various grounds. Defendants first argue that the Court should bifurcate discovery into two phases and hold collective-wide discovery in abeyance until the joint-employment issue is resolved definitively by the Court. Defendants also object to collective-wide discovery because "Plaintiff cannot show that the proposed collective is similarly situated," Def. Opp. at 5, and because Plaintiff's requests are overbroad and not proportional to the needs of the case. Defendants' objections to collective-wide discovery deal with the following requests:

*Requests for Production*

11. "All documents reflecting, referring, or relating to the job descriptions, responsibilities, hours, and/or compensation of building superintendents, including Plaintiff and those similarly situated, working in: (a) Defendant 1425 University Ave, Bronx NY 10452; (b). Any building owned by and/or managed by Defendant Chestnut Holdings, Inc.; (c.) Any building owned by and/or managed by Defendant Jonathan Wiener."

13. "All documents reflecting, referring, or relating to any complaints about the compensation of any superintendent for the period February 6, 2012 to the present, including but not limited to minimum wages, overtime, and benefits, made to: (a) Defendant 1425 University Ave, Bronx NY 10452; (b). Any building owned by and/or managed by Defendant Chestnut Holdings, Inc.; (c.) Any building owned by and/or managed by Defendant Jonathan Wiener."

16. "All documents reflecting names and addresses of all other individuals from February 6, 2012 to the present who were worked as superintendents and/or performed the same or similar work tasks for Plaintiff for: (a) Defendant 1425 University Ave, Bronx NY 10452; (b). Any building owned by and/or managed by Defendant Chestnut Holdings, Inc.; (c). Any building owned by and/or managed by Defendant Jonathan Wiener."

17."Attendance and earnings records for all other individuals who performed the same or similar work tasks for Defendants."

7

**18.** "All offer letters, contracts, and/or other documents reflecting or referring to the initial offers of employment to Plaintiff, and/or any other individuals employed during the relevant time period who performed the same or similar duties as Plaintiff for: (a). Defendant 1425 University Ave, Bronx NY 10452; (b). Any building owned by and/or managed by Defendant Chestnut Holdings, Inc.; (c). Any building owned by and/or managed by Defendant Jonathan Wiener."

**19.** "All documents or schedules concerning or reflecting work assignments during the period of Plaintiffs' employment, given to Plaintiff and/or any other individual who performed the same or similar duties as Plaintiff during the relevant period for: a. Defendant 1425 University Ave, Bronx NY 10452; b. Any building owned by and/or managed by Defendant Chestnut Holdings, Inc.; c. Any building owned by and/or managed by Defendant Jonathan Wiener."

**30.** All ESI from the date Plaintiff was hired to the present containing the following search terms with the following custodians:

> Search terms: Alejandro and/or Huggins and "fired" or "terminated" or "retaliation" or "wage" or "overtime" or "lawsuit" or "warning" or "lawyer" or "attorney" or "court"; "minimum wage"; and "overtime."

> Custodians: Jonathan Wiener; Zohar Yaish; Ian Stowe; Cesar Morales; Ari-Tzvi Marks; Any other supervisor and/or manager employed by 1425 U LLC; The individual "Gina" identified in Plaintiff's Initial Disclosures; The individual "Angela" identified in Plaintiff's Initial Disclosures.

*Interrogatories*

**6.** "Identify all individuals who from February 6, 2012 to the present, worked as a building superintendent: a) for Defendant 1425 University Ave, Bronx NY 10452; b) in any building owned by and/or managed by Defendant Chestnut Holdings, Inc.; c) in any building owned by and/or managed by Defendant Jonathan Wiener. Include the approximate dates of each individual's employment and the address of the building where each individual worked.

**9.** "Identify all building superintendents working in any building owned and or/managed by any Defendant who have complained to Defendants about alleged wage and hour violations, insufficient wages, insufficient overtime, and/or insufficient benefits for the period February 6, 2012 to the present."

Simpson Decl, Ex. 1 at 1-8.

To the extent Defendant's opposition constitutes a blanket objection to any collective-wide

8

discovery, that objection is rejected.[4] Courts in this district regularly permit and compel pre-certification discovery pertaining to putative class members. *See, e.g., Youngblood v. Family Dollar Stores, Inc.*, No. 09 CIV. 3176 (RMB)(FM), 2011 WL 1742109, at *3 (S.D.N.Y. Jan. 5, 2011); *Ruiz v. Citibank, N.A.*, No. 10 CIV 5950 (JGK), 2011 WL 43509, at *1 (S.D.N.Y. Jan. 4, 2011). Moreover, the Court already ordered the parties to engage in discovery related to Plaintiff's motion for collective action certification.

Defendants' concern regarding scope, however, is a valid one. If Defendants ultimately prevail in showing that Chestnut Holdings did not employ any of the superintendents of the buildings it owns and/or manages, the scope of potential plaintiffs in this litigation changes from 100 building superintendents to one.[5] There is consequently a real risk that ordering full compliance with Plaintiff's RFPs as they relate to "any building owned by and/or managed by Defendant Chestnut Holdings, Inc" could force Defendants to undergo an extensive and burdensome discovery production that, in the end, is irrelevant. Still, should Plaintiff prevail on the joint-employer issue, these documents will be useful to determining whether and to what extent building superintendents across properties are similarly situated for purposes of Plaintiff's collective action certification motion.

Defendant's proposal to bifurcate discovery is not the right solution. Since the parties have not entered into a tolling agreement, the additional delays that would result from bifurcation may prejudice Plaintiff.[6] In Plaintiff's words, "the statute of limitations continues to run every day,"

---

[4] Defendants also object to Plaintiff's collective-wide discovery requests because they require production of sensitive information, such as Defendants' shareholder information. This concern is easily alleviated by a protective order. *See* Fed. R. Civ. P. 26(c).

[5] It is not clear from the parties' submissions how many buildings Weiner owns in his individual capacity, or to what extent Defendants dispute Weiner's status as Plaintiff's joint-employer.

[6] But Plaintiff can always add new parties as plaintiffs to this action. There is nothing to stop other similarly situated superintendents from joining in the lawsuit, which would stop the statute for anyone choosing to join.

Pl.'s Mem. at 11, and "each day that passes reduces the claims of potential collective members." *Id.* Moreover, there is a risk of inefficiency and duplication of effort, as many of the people who would need to be deposed on the joint-employer issue would need to be deposed again on the merits.[7] *See Hines v. Overstock, Com, Inc.*, No. 09-CV-991 (SJ), 2010 WL 2775921, at *1 (E.D.N.Y. July 13, 2010). The Court thus stands by its initial ruling that absent a tolling agreement, discovery in this case will proceed without bifurcation.[8]

The proportionality called for by the Federal Rules of Civil Procedure requires balancing Plaintiff's need for collective action discovery with Defendants' concerns about wasted effort and expense. The Court will not require Defendants to produce responses to RFPs # 11, # 13, and ## 17-19 for every building owned and/or managed by Chestnut Holdings. Instead, the Court imposes a "spot-check" system under which the parties must confer and agree to production for a representative sample of Chestnut Holdings' buildings, not to exceed ten.

Additionally, RFP # 16 exceeds the scope of pre-collective action FLSA discovery typically authorized by courts in this district, which is limited to names and contact lists, not documents. *See, e.g., Youngblood v. Family Dollar Stores, Inc.*, No. 09 CIV. 3176 RMB FM, 2011 WL 1742109, at *3 (S.D.N.Y. Jan. 5, 2011); *see also Shanfa Li v. Chinatown Take-Out Inc.*, No. 16 CIV. 7787 (JCM), 2018 WL 1027161, at *6 (S.D.N.Y. Feb. 21, 2018). Plaintiffs are

---

Plaintiff alleges, however, that "other similarly situated superintendents are reluctant to be associated with Plaintiff," Second Amended Complaint ¶ 34, based on the alleged retaliatory action taken against him, and "out of fear that they too will lose their jobs and their homes." *Id.*

[7] Notably, this is the same argument Defendants made to the Court in opposing bifurcation at the initial pretrial conference. *See* Conf. Transcript at 8.

[8] "The standards applicable to motions to bifurcate discovery appear to be the same as those addressed under Fed. R. Civ. P. 42(b) governing separate trials, namely, the motion may be granted [f]or convenience, to avoid prejudice, or to expedite and economize." *Charvat v. Plymouth Rock Energy, LLC*, No. 15 CV 4106 (JMA) (SIL), 2016 WL 207677, at *1 (E.D.N.Y. Jan. 12, 2016) (internal quotation omitted). Ultimately, "the decision to bifurcate is left to the Court's discretion." *Id.* at *2 (citation omitted).

entitled to a list of all "individuals from February 6, 2012 to the present who were worked as superintendents and/or performed the same or similar work tasks for Plaintiff," including their contact information.[9] They are not entitled to any documents that contain such information in Defendants' possession.[10]

Accordingly, Defendants are ORDERED to produce responses, without modification, to: (1) RFPs ## 11, 13, 17-19 as they relate to Defendants Weiner and 1425 U LLC; and (2) Interrogatories # 6 and # 9. The parties are further ORDERED to confer and agree upon a representative sample of the buildings owned and/or managed by Chestnut Holdings, not to exceed ten, for which Defendants will be required to produce responsive documents to RFPs # 11, 13, 17-19.[11] Defendants are not required to respond to RFP # 16 at this time, but they are required to include last known contact information in their response to Interrogatory # 6.

---

[9] Interrogatory # 6 requests the names and ages of these individuals, but not their contact information. *See* Moreland Decl., Dkt. 48, Ex. 1 at 3.

[10] Plaintiff appears to consent to this modification of RFP # 16 in his Reply. *See* Dkt. 49, at 4.

[11] If, after conferring in good faith, the parties cannot reach agreement on a representative sample of buildings owned and/or managed by Chestnut Holdings buildings, they should notify the Court promptly.

## CONCLUSION

Plaintiff's motion to compel is GRANTED, as modified. Defendants are hereby ORDERED to respond to all of Plaintiff's discovery requests set forth in Exhibit 1 of the Declaration of Scott Simpson, Dkt. 43, with the following modifications:[12]

1. RFPs # 16, # 22, and # 30 are removed;
2. RFP # 24 remains only if converted into an interrogatory, as detailed above;
3. RFPs # 11, # 13, and ## 17-19, as they relate to buildings owned and or managed by Defendant Chestnut Holdings, are limited to documents from a representative sample of buildings, not to exceed ten, agreed upon by the parties.
4. Interrogatory # 6 is modified to include last known contact information for each individual provided.

The Clerk of the Court is instructed to close the motion at Dkt. 42.

Dated: New York, New York
June 1?, 2019

SO ORDERED

*/s/ Paul A. Crotty*
PAUL A. CROTTY
United States District Judge

---

[12] The rulings in this Order are limited to discovery for pre-collective action certification. Nothing in this Order prevents Plaintiff from requesting stricken RFPs following a disposition on the motion for collective action certification.

12