UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
ALEJANDRO HUGGINS, *on behalf of himself
and others similarly situated*,

|  |  |
|---|---|
| *Plaintiff, and Lead Plaintiff for the Proposed Class* | Civil Action No. 1:18-cv-01037 (PAC) |

-v.-

CHESTNUT HOLDINGS OF NEW
YORK INC.; 1425 U LLC; and
JONATHAN WIENER,

*Defendants.*

-------------------------------------------------------------------------x


**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION, LEAVE TO DISTRIBUTE NOTICE, DISCLOSURE OF CONTACT INFORMATION AND EQUITABLE TOLLING PURSUANT TO 29 U.S.C. § 216(B)**


CLIFTON BUDD & DeMARIA, LLP
*Attorneys for Defendants*
The Empire State Building
350 Fifth Avenue, 61st Floor
New York, New York 10118
(212) 687-7410 (tel)
(212) 687-3285 (fax)

**Counsel**:
Daniel C. Moreland
Stephen P. Pischl

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ iii

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS........................................................................................................... 3

ARGUMENT................................................................................................................................ 6

    I.       The Standard for Issuing Notice of a Collective Action: Plaintiffs Must Show They Were Similarly Situated with Regard to a Common Policy to Violate the FLSA, Providing a Minimum Level of Detail to Support a Comparison............................................................................................................ 6

    II.     Plaintiffs' Motion Is Improperly Predicated on an Undecided "Joint Employment" Theory of Liability, Which They Have Failed to Support at This Stage. ....................................................................................................... 8

          A.     This Court Has Held That the Joint-Employment Issue Is a Critical, Preliminary Inquiry in Determining Whether to Certify a Collective, Which Plaintiffs Have Entirely Failed to Address......................... 8

          B.     Should This Court Consider the Issue, *Sua Sponte*, Plaintiffs Fail to Plead or Allege Facts Sufficient to Establish a Joint Employer Relationship Under the FLSA............................................................... 10

    III.    Plaintiffs' Purely Conclusory Allegations in Their Supporting Declarations Fail to Satisfy Their Burden to Allege With Proper Specificity that There Were Similarly Situated Persons with Regard to Any Alleged FLSA Claim. ...................................................................................... 14

          A.     Plaintiffs Fail to Sufficiently Detail That Similarly-Situated Persons Were Paid Less than $7.25 per Hour.................................... 14

          B.     Similarly, Plaintiffs Fail to Identify Any Similarly-Situated Persons Subject to a Common Policy Not to Be Paid Overtime. ...................... 18

    IV.    Not Only Have Plaintiffs Failed to Make the Requisite Showing of a Factual Nexus to Warrant Conditional Certification, But Their Intended Notice Is Also Defective................................................................................ 21

          A.     There Is No Basis to Conditional Certify a Collective As to Non-Resident Supers Who Did Not Live in the Building Where They Worked. ................................................................................................. 22

B.    The Proposed Notice Is Defective in Not Being Limited to the Three-Year Period Immediately Preceding the Filing of the Complaint. .................................................................................................... 23

C.    Only Notice by Mail Is Indicated, and Plaintiffs Fail to Identify Any Need for Notification via Text Message and/or Email. ............................ 23

D.    Plaintiffs Are Not Entitled to Equitable Tolling, an Extraordinary Remedy Not Warranted Herein. .................................................. 24

CONCLUSION ................................................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*A.Q.C. ex rel. Castillo v. United States*,
   656 F.3d 135 (2d Cir. 2011) ................................................................................ 24

*Barfield v. N.Y. City Health & Hosps. Corp.*,
   No. 05-cv-6319 (JSR), 2005 WL 3098730, (S.D.N.Y. Nov.18, 2005) ............................... 19

*Barfield v. New York City Hlth. and Hosp. Corp.*,
   537 F.3d 132 (2d Cir. 2008) ................................................................................ 11

*Barrett v. Forest Labs., Inc.*,
   No. 12-cv-5224, 2015 WL 4111827 (S.D.N.Y. July 8, 2015) ........................................ 24

*Bondi v. New Rochelle Hotel Assocs.*,
   No. 17-cv-5681(KMK)(LMS), 2018 WL 7246962 (S.D.N.Y. Dec. 7, 2018),
   *report and recommendation adopted*, No. 17-cv-5681 (KMK),
   2019 WL 464821 (S.D.N.Y. Feb. 6, 2019) ............................................................... 16

*Bravo v. Established Burger One, LLC*,
   No. 12-cv-9044 (CM), 2013 WL 5549495 (S.D.N.Y. Oct. 8, 2013) ................................. 12

*Cannon v. Douglas Elliman, LLC*,
   No. 06-cv-7092 (NRB), 2007 WL 4358456 (Dec. 10, 2007) ......................................... 12

*Cano v. Four M Food Corp.*,
   No. 08-cv-3005 (JFB) (AKT), 2009 WL 5710143 (E.D.N.Y. Feb. 3, 2009) ....................... 20

*Fu v. Mee May Corp.*,
   No. 15-cv-4549 (KPF), 2016 WL 1588132 (S.D.N.Y. Apr. 20, 2016).................................. 7

*Goldberg v. Whitaker House Coop, Inc.*,
   366 U.S. 28 (1961) ........................................................................................... 11

*Guillen v. Marshalls of MA, Inc.*,
   841 F.Supp.2d 797 (E.D.N.Y. 2012) ...................................................................... 20

*Hart v. Rick's Cabaret Int'l, Inc.*,
   967 F. Supp. 2d 901 (S.D.N.Y. 2013)..................................................................... 13

*Herman v. RSR Sec. Servs. Ltd.*,
   172 F.3d 132 (2d. Cir. 1999) ............................................................................... 11

*Hernandez v. Chefs Diet Delivery, LLC*,
   81 A.D.3d 596 (2d Dep't 2011) ............................................................................ 13

*Hernandez v. Habana Room, Inc.*,
   No. 11-cv-1264 (RMB) (JCF), 2012 WL 423355 (S.D.N.Y. Feb. 9, 2012) ...................................... 13

*Hoffman-LaRoche Inc. v. Sperling*,
   493 U.S. 165 (1989) .................................................................................................................. 6

*Hoffmann v. Sbarro, Inc.*,
   982 F. Supp. 249 (S.D.N.Y. 1997) ......................................................................................... 6, 7

*Huertero-Morales v. Raguboy Corp.*,
   No. 17-cv-2429 (JCF), 2017 WL 4046337 (S.D.N.Y. Sept. 12, 2017) ...................................... 7, 18

*Ikikhueme v. CulinArt, Inc.*,
   No. 13-cv-293 (JMF), 2013 WL 2395020 (S.D.N.Y. June 3, 2013) .................................................. 18

*In re Harris*,
   464 F.3d 263 (2d Cir. 2006) ................................................................................................... 10

*Irizarry v. Catsimatidis*,
   722 F.3d 99 (2d Cir. 2013) ..................................................................................................... 13

*Irwin v. Dep't of Veterans Affairs*,
   498 U.S. 89 (1990) .................................................................................................................. 24

*Jenkins v. TJX Cos. Inc.*,
   853 F.Supp.2d 317 (E.D.N.Y. 2012) ...................................................................................... 21

*Jeong Woo Kim v. 511 E. 5th St., LLC*,
   985 F. Supp. 2d 439 (S.D.N.Y. 2013) .................................................................................... 22

*Ji Li v. Ichiro Rest. Inc.*,
   No. 14-cv-10242 (AJN), 2015 WL 6828056 (S.D.N.Y. Nov. 5, 2015) .............................................. 18

*Karvaly v. eBay, Inc.*,
   245 F.R.D. 71 (E.D.N.Y.2007) .............................................................................................. 23

*Kassman v. KPMG LLP*,
   No. 11-cv-03743 (LGS), 2015 WL 5178400 (S.D.N.Y. Sept. 4, 2015) ............................................ 24

*Khan v. Airport Mgmt. Servs., LLC*,
   No. 10-cv-7735 (NRB), 2011 WL 5597371 (S.D.N.Y. Nov. 16, 2011) .............................................. 7

*Laroque v. Domino's Pizza, LLC*,
   557 F. Supp. 2d 346 (E.D.N.Y. 2008) .................................................................................... 19

*Lijun Geng v. Shu Han Ju Rest. II Corp.*,
   No. 18-cv-12220 (PAE)(RWL), 2019 WL 4493429 (S.D.N.Y. Sept. 9, 2019) .................................. 21

*Lin v. Joedy*,
   214 F. Supp. 3d 207 (W.D.N.Y. 2016) ........................................................................ 10

*Lira v. Eagle Open Kitchen LLC*,
   No. 14-cv -2356 (KBF), 2014 WL 7910482 (S.D.N.Y. July 14, 2014) ......................... 23

*Mata v. Foodbridge LLC*,
   No. 14-cv-8754 (ER), 2015 WL 3457293 (S.D.N.Y. June 1, 2015) ............................... 7

*Morales v. Plantworks, Inc.*,
   No. 05-cv-2349 (DC), 2006 WL 278154, (S.D.N.Y. Feb. 2, 2006) ................................ 7

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010) ..................................................................................... 6, 7

*Pace v. DiGuglielmo*,
   544 U.S. 408 (2005) ..................................................................................................... 24

*Paguay v. Barbasso, Inc.*,
   No. 11-cv-6266 (LTS)(HBP), 2012 WL 2914288 (S.D.N.Y. July 17, 2012) ................ 23

*Prizmic v. Armour, Inc.*,
   No. 05-cv-2503(DLI)(MDG), 2006 WL 1662614 (E.D.N.Y. Jun. 12, 2006) .......... 7, 8, 17

*Reab v. Electronic Arts, Inc.*,
   214 F.R.D. 623 (D.Colo. 2002) .................................................................................... 23

*Reyes v. NY F&B Services, LLC*,
   No. 15-cv-882(LTS)(DCF), 2016 WL 796859 (S.D.N.Y. Feb. 22, 2016) ................ 22, 23

*Sanchez v. El Rancho Sports Bar Corp.*,
   No. 13-cv-5119 (RA), 2014 WL 1998236 (S.D.N.Y. May 13, 2014) ........................... 23

*Sanchez v. JMP Ventures, L.L.C.*,
   No. 13-cv-7264 (KBF), 2014 WL 465542, (S.D.N.Y. Jan. 27, 2014) ...................... 16, 22

*Sharma v. Burberry Ltd.*,
   52 F. Supp. 3d 443 (E.D.N.Y. 2014) ...................................................................... 20, 24

*Taveras v. D & J Real Estate Mgmt. II, LLC*,
   324 F.R.D. 39 (S.D.N.Y. 2018) .................................................................................... 12

*Urtubia v. Ba Victory Corp.*,
   857 F.Supp.2d 476 (S.D.N.Y. 2012) ............................................................................ 23

*Warman v. Am. Nat'l Standards Inst.*,
   193 F. Supp. 3d 318 (S.D.N.Y. 2016) .......................................................................... 22

*Zerilli–Edelglass v. New York City Transit Auth.,*
    333 F.3d 74 (2d Cir. 2003)...................................................................................24

*Zheng v. Liberty Apparel Co.,*
    355 F.3d 61 (2d Cir. 2003)...................................................................................11

## **Statutes**

29 U.S.C. § 203 ...................................................................................................11

29 U.S.C. § 206 ..............................................................................................14, 15

29 U.S.C. § 216 .........................................................................................1, 6, 7, 22

## **Regulations**

29 C.F.R. § 785.11 ...............................................................................................22

29 C.F.R. § 785.14 ...............................................................................................22

29 C.F.R. § 785.17 ...............................................................................................22

29 C.F.R. § 785.24 ...............................................................................................22

29 C.F.R. § 785.26 ...............................................................................................22

## PRELIMINARY STATEMENT

Defendants Chestnut Holdings of New York, Inc. ("Chestnut Holdings"), 1425 U LLC, and Jonathan Wiener ("Wiener") (collectively "Defendants"), respectfully submit this memorandum of law in opposition to the motion by plaintiff Alejandro Huggins ("Huggins") and opt-in plaintiff Clinton Jack ("Jack") (collectively "Plaintiffs") requesting (1) conditional certification of an Fair Labor Standards Act ("FLSA") collective and leave to issue notice pursuant to 29 U.S.C. § 216(b); (2) Defendants' disclosure of the contact information of putative opt-in members of the proposed collective; and (3) equitable tolling of the applicable statute of limitations for the period between October 30, 2018 and the date the Court resolves this motion. Plaintiffs have entirely failed to meet their burden at this stage to warrant conditional certification of any collective, and the motion should be denied in its entirety.

Plaintiffs, two former resident superintendents at two separate buildings managed by Chestnut Holdings, seek conditional certification and issuance of notice as to a putative collective they identify as all current or former superintendents who allegedly worked in any of the more than one hundred buildings that Chestnut Holdings manages, owned by nearly as many third-party entities not parties to this action. Plaintiffs' motion must be denied on this record.

It is frankly surprising that Plaintiffs have sought conditional certification without having made even a token attempt to explain how, if at all, Chestnut Holdings is their "employer" under the FLSA.[1] Plaintiffs appear to willfully ignore the relevant law of this Circuit and the prior findings of this Court, and take as a foregone conclusion that Chestnut Holdings, a property

---

[1] Plaintiffs' initial motion papers, and three of the four supporting declarations, were either previously submitted or largely repeat verbatim papers submitted in support of a motion for conditional certification filed by Plaintiffs' counsel in an action pending before the Honorable Valerie E. Caproni, *Zenon De La Rosa v. Chestnut Holdings of New York, Inc., et al.*, Civil Case No. 1:19-cv-00286 (VEC). That matter proceeded on a completely different procedural posture. The motion for conditional certification in that matter was ultimately withdrawn and, in an Order entered August 9, 2019, Judge Caproni denied any claims in that matter on behalf of any putative collective.

management firm, is their joint employer with the owners of their respective buildings, who they are forced to concede are their "formal[] employ[ers]." In this Court's recent Order resolving a dispute between the parties as to the appropriate scope of discovery, Your Honor held that the unresolved issue of whether Chestnut Holdings and the owners of the buildings it manages constitute "joint employers" under the FLSA would have a "critical impact" on the viability of any purported collective, acknowledging that this threshold question of law and fact must be resolved prior to any determination whether a collective could be certified, if at all. To that end, the parties were directed to conduct limited, phased discovery into a ten-building subset of the portfolio managed by Chestnut Holdings.

While this phased discovery has been completed, rather than marshalling any of those materials in support of some meaningful argument as to whether the property owners and Chestnut Holdings were joint employers relative to the FLSA, Plaintiffs instead seek conditional certification as to all superintendents in any of the buildings managed by Chestnut Holdings *without first resolving this critical threshold issue*. Given Plaintiffs' failure to attempt resolution of the open question as to who "employed" Plaintiffs between the named defendants, Plaintiffs motion to conditionally certify a collective is fatally premature and must be dismissed for that reason alone. Moreover, Plaintiffs' failure to address joint employment in their initial moving papers forecloses further argument on this issue, and this Court should not consider arguments raised for the first time on reply.

Notwithstanding the unresolved issue of whether Chestnut Holdings jointly employed Plaintiffs, Plaintiffs also fail to produce any evidence of a factual nexus between the relevant personal circumstances of their own claimed FLSA minimum wage and overtime violations, and those of any superintendents employed at the buildings managed by Chestnut Holdings. Plaintiffs

and those alleged witnesses who have offered supporting declarations in this matter (the "Declarants") concede that they were the only employees working in their respective buildings. None can plausibly allege that they ever observed the working conditions, wages earned, or hours worked of the superintendents at any other Chestnut Holdings managed building. Plaintiffs fail to otherwise provide any sufficiently probative, nonconclusory allegations from individuals with knowledge as to those conditions. In addition, Plaintiffs' allegations concerning their own particular circumstances—their scheduled hours, the days they were expected to work, the weekly pay their received, the individuals who supervised them—all vary widely, and are patently insufficient to support any finding that they were similarly situated with regard to a common policy or practice that violates the FLSA.

Finally, Plaintiffs' proposed notice itself is also defective, as any notice should (1) be limited to putative collective members employed within only three years of the filing of the Complaint as a matter of law; (2) be jointly drafted by the parties after conferring; (3) be issued solely via first-class mail, and not email or text; and (4) not be subject to equitable tolling.

## STATEMENT OF FACTS

Huggins commenced the instant action against the Defendants on or about February 6, 2018, alleging violations of, *inter alia*, the FLSA. *See* ECF Dkt. No. 1. During the pendency of this action, Plaintiff has amended his complaint twice, most recently filing a Second Amended Complaint, the operative pleading in this matter, on or about June 18, 2018 (hereinafter the "Complaint"). (*See* ECF Dkt. No. 31.) Jack filed a consent to join this action on or about August 21, 2019. (ECF Dkt. No. 55.)

Huggins and Jack allege that they are former resident superintendents at two residential apartment buildings, located at 1425 University Avenue, Bronx, New York 10452 ("1425 University Avenue") and 1742-1746 Union Avenue, Brooklyn, New York ("1742-1746 Union

Avenue"), respectively. (*See* Complaint, *generally*; Jack Decl., *generally*.) At all relevant times herein, 1425 U LLC owned the building located at 1425 University Avenue. (Complaint, ¶ 20.) Non-party 1742-1746 Union LLC owned the building located at 1742-1746 Union Avenue. Chestnut Holdings, a real estate property management firm, provides property management services to more than one hundred buildings in the New York City area, including to 1425 University Avenue and 1742-1746 Union Avenue. (Complaint, ¶ 13-14.) Wiener is the President of Chestnut Holdings. (*Id*.)

Plaintiffs allege two causes of action under the FLSA, claiming that: (1) Defendants failed to pay them the minimum wage for each our worked in any given work week (*see* Complaint, ¶¶ 87-94); and (2) Defendants failed to pay them overtime compensation at a rate not less than on and one-half times the regular rate of pay for each hour worked in excess of forty per week (*see* Complaint, ¶¶ 95-98). The parties dispute whether any of the Defendants other than the owners of the buildings where Plaintiffs worked "employed" Plaintiffs for purpose of the FLSA. Defendants contend that Chestnut Holdings and the owners of the buildings it manages are not joint employers, and that neither Chestnut Holdings nor Wiener ever employed either plaintiff. (*See*, *e.g*., Answer to Amended Complaint ("Answer"), ECF Dkt No. 32, ¶¶ 13, 17-19, 24.)

The parties began discovery in accordance with a Civil Case Management Plan and Scheduling Order dated September 11, 2018. (*See* ECF No. 35.) Thereafter the parties developed a dispute as to the appropriate scope of discovery relative to the joint employment issue. Huggins moved to compel certain responses as to all buildings managed by Chestnut, as opposed to only his employer, 1425 U LLC. (*See generally* ECF Dkt. No. 42.) Defendants opposed the motion. (ECF Dkt. No. 46.)

In an Opinion & Order entered on or about June 25, 2019, this Court reviewed the parties' dispute, granting the motion only in part and starkly limiting the scope of discovery sought by Huggins.

(*See* ECF Dkt. No. 52.) Noting that Huggins contended in support of the motion to compel that he believed there was "already enough evidence" to show that all three Defendants jointly employed him (*see* ECF Dkt. 44, at 10), and evaluating this claim and other evidence, Your Honor did not decide the question of joint employment, but instead held that this issue was outstanding, concluding as follows:

> *Resolution of this joint-employer issue will have a critical impact on the scope of this litigation, as well as its viability as a collective action.* […] If Defendants ultimately prevail in showing that Chestnut Holdings did not employ any of the superintendents of the buildings it owns and/or manages, the scope of potential plaintiffs in this litigation changes from 100 building superintendents to one.

(Opinion & Order, ECF Dkt. No. 52, pp. 5, 9 (*emphasis added*).) Moreover, as set forth in the Order, this Court found the joint employer question was a threshold question of law and fact that would need to be resolved to assess the viability of any proposed collective action. (*Id*. at p. 5.) To develop the record on this issue, Your Honor directed the parties to participate in "phased" discovery, whereby the parties were to "confer and agree to production for a representative sample of Chestnut Holdings' buildings, not to exceed ten," for which the Defendants will be required to produce [additional] responsive documents." (*Id*. at 11.) To date, Plaintiff has made no subsequent application concerning the joint-employment issue, nor has this Court made any further ruling on joint employment.

Plaintiffs now seek conditional certification of an FLSA collective and leave to issue notice pursuant to 29 U.S.C. § 216(b), not only as to superintendents who, like Plaintiffs, were employed at 1425 University Avenue and 1742-1746 Union Avenue over the relevant time period, but as to any superintendent in any Chestnut Holdings managed properties. (*See generally* Plaintiff's Memorandum of Law, filed October 11, 2019 ("Pl. MOL"), ECF Dkt. No. 62). Defendants oppose the motion, and request that this Court decline to exercise its discretion to conditionally certify a collective and issue notice relative to any claims under the FLSA.

## ARGUMENT

**I.**     **The Standard for Issuing Notice of a Collective Action: Plaintiffs Must Show They Were Similarly Situated with Regard to a Common Policy to Violate the FLSA, Providing a Minimum Level of Detail to Support a Comparison.**

The FLSA permits employees to maintain an action "for and in behalf of […] themselves and other employees similarly situated." 29 U.S.C. § 216(b). Other allegedly "similarly situated" claimants may opt-in to putative FLSA collective action, if they consent to become a party to the action in a writing filed with the court. *Id*. Plaintiffs may seek an order from a district court authorizing the issuance of notice of such a pending action to potential opt ins; such orders sometimes referred to as orders "certifying" a collective action, even though the FLSA does not contain a certification mechanism. *Myers v. Hertz Corp.*, 624 F.3d 537, 555 n.10 (2d Cir. 2010). Where a court refers to "certifying" a collective action, it means only that the court has exercised its discretionary power "to facilitate the sending of notice" to allegedly similarly situated individuals. *Id*. While "district courts have discretion, *in appropriate cases,* to implement [§ 216(b)], by facilitating notice"—they are not required to do so by [the] FLSA," *Myers,* 624 F. 3d at 554 (*citing Hoffman-LaRoche Inc. v. Sperling,* 493 U.S. 165, 169 (1989) (*emphasis added*)); a district court may facilitate notice in its discretion where it would "be a useful 'case management' tool," however, issuing notice is "neither necessary nor sufficient" for maintaining a representative action. *Myers,* 624 F. 3d at 555, n. 10 (*citing Hoffman-LaRoche Inc.,* 493 U.S. at 174).

In determining whether to exercise such discretion to issue notice "to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred," *see Myers*, 624 F.3d at 554-555, a plaintiff need only "make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Id.* (*citing Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). Thus, "[t]he threshold issue in deciding whether to authorize class notice in an FLSA action is whether plaintiffs

have demonstrated that potential class members are 'similarly situated'" with regard to a common policy that violated the FLSA. *Hoffmann*, 982 F. Supp. at 261 (*quoting* 29 U.S.C. § 216(b)).

Significantly, however, "while [a] plaintiff's burden at this stage is modest, it is not non-existent." *Khan v. Airport Mgmt. Servs., LLC*, No. 10-cv-7735 (NRB), 2011 WL 5597371, at *5 (S.D.N.Y. Nov. 16, 2011). Even during the first, "notice" step, a plaintiff's burden under § 216(b) "cannot be satisfied simply by unsupported assertions," *Myers*, 624 F.3d at 555 (*citation omitted*), or with "conclusory allegations." *Morales v. Plantworks, Inc.*, No. 05-cv-2349 (DC), 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006) (denying conditional approval where there was no support for plaintiffs' claim that they were similarly situated to other employees other than a "conclusory allegation [...] that '[t]here are over 20 current and former employees that are similarly situated to Plaintiffs [...].'"). As the consensus of authority in the Southern District has uniformly held:

> [A] plaintiff cannot simply state his belief that others are similarly situated based on conversations with or observations of those other potential opt-in members; rather, he must supply additional detail regarding the particular conversations or observations substantiating that belief. There is a consensus in this district that where a plaintiff bases an assertion of a common policy on observations of coworkers or conversations with them, he must provide a minimum level of detail regarding the contents of those conversations or observations.

*Fu v. Mee May Corp.*, No. 15-cv-4549 (KPF), 2016 WL 1588132, at *2 (S.D.N.Y. Apr. 20, 2016); *accord Huertero-Morales v. Raguboy Corp.*, No. 17-cv-2429 (JCF), 2017 WL 4046337, at *3 (S.D.N.Y. Sept. 12, 2017) (conditional certification and notice held not to be appropriate where a plaintiff provides "no details about his conversations with other employees"); *accord Mata v. Foodbridge LLC*, No. 14-cv-8754 (ER), 2015 WL 3457293, *4 (S.D.N.Y. June 1, 2015).

Simply put, the notice process under § 216(b) is not a license to conduct "a frivolous fishing expedition" for potential plaintiffs "at the employer's expense." *Prizmic v. Armour, Inc.*, No. 05-cv-2503(DLI)(MDG), 2006 WL 1662614, at *2 (E.D.N.Y. Jun. 12, 2006). Plaintiffs must provide

actual evidence of a factual nexus between their circumstances and those they claim are similarly situated. *Id*. Courts should decline to exercise their discretion to conditionally certify a collective and issue notice where, as here, plaintiffs have failed to allege, in non-conclusory terms, the existence of persons similarly situated with respect to a common policy that violates the FLSA.

## II. Plaintiffs' Motion Is Improperly Predicated on an Undecided "Joint Employment" Theory of Liability, Which They Have Failed to Support at This Stage.

Plaintiffs predicate their motion for conditional certification and issuance of notice on the misguided premise that *all three Defendants* are liable for any claimed violations of the FLSA as Plaintiffs' alleged "joint" employers. (*See*, *e.g.*. Pl. MOL, Pt. II, at p. 2 ("early discovery produced extensive evidence that Defendants jointly employed Huggins").) Failing to make any argument concerning this critical and unresolved threshold issue, Plaintiffs nevertheless attempt to use a joint employer theory of liability to support their application for conditional certification. Plaintiffs would have this Court conditionally certify an FLSA collective covering any superintendent who works at any one of the more than one hundred buildings that were managed by Chestnut Holdings, *despite there being no finding that Chestnut Holdings employed any superintendent, including either Plaintiff*. Plaintiffs' application is patently improper in that it: (i) ignores the relevant law of this Circuit and prior findings of this Court; and (ii) misconstrues the relevant factual allegations concerning "joint employer" liability.

### A. This Court Has Held That the Joint-Employment Issue Is a Critical, Preliminary Inquiry in Determining Whether to Certify a Collective, Which Plaintiffs Have Entirely Failed to Address.

Plaintiffs treat what is at this stage a critical, dispositive and unresolved question of fact as a foregone legal conclusion. In their memorandum in support of the instant motion, Plaintiffs set forth as part of their recitation of uncontested facts in this matter that "Defendants jointly employed Plaintiff [sic]" (*see* Pl. MOL, Pt. III, p. 6), citing to certain materials submitted in support of a

motion to compel (*see* Pl. MOL, Pt. II, p. 2 fn. 1, *citing* ECF Dkt. Nos. 43-2 through 43-11). Notwithstanding that these materials are largely devoid of information pertinent to this inquiry or are otherwise completely irrelevant to the employment relationship, each of these materials was before this Court on the earlier motion to compel. (*See* Opinion & Order, ECF Dkt. No. 52, p. 4 fn. 3.) Considering these same materials, Your Honor ruled:

> A central question here is whether all three Defendants constitute [Huggin]'s "joint-employers" under the FLSA. […] Plaintiff believes there is "already enough evidence" to show that all three Defendants jointly employed Plaintiff. Pl.'s Mem., Dkt. 44, at 10. Defendants, however, dispute this classification as to Chestnut Holdings, arguing that as a property management firm, Chestnut Holdings operates more like an "outsourced human resources department," Def. Opp., Dkt. 46, at 2, which "provides human resources support for many of its clients, [but] does not directly employ these clients' employees." *Id.*
>
> […]
>
> Resolution of this joint-employer issue will have a critical impact on the scope of this litigation, as well as its viability as a collective action. Chestnut Holdings manages more than 100 properties. Should the Court find that Chestnut Holdings "employs" the superintendents at all of the buildings it […] manages, the scope of similarly situated potential [plaintiffs] in this action will be much broader.
>
> […]
>
> If Defendants ultimately prevail in showing that Chestnut Holdings did not employ any of the superintendents of the buildings it owns and/or manages, the scope of potential plaintiffs in this litigation changes from 100 building superintendents to one.

(Opinion & Order, ECF Dkt. No. 52, p. 4-5, 9.) Thus, not only did this Court not decide the question of joint employment based on these identical supporting declarations and exhibits, but Your Honor's ruling advised that this threshold question of law and fact must be resolved to assess the viability of any proposed collective action. (*Id.* at p. 5.)

While the parties completed the additional, "phased" discovery directed by the Court to address this threshold question, Plaintiffs (1) have supplied virtually none of the subsequent

disclosures in support of the present motion; (2) did not articulate the relevant standard for evaluating whether entities are "joint employers" relative to the FLSA; and (3) have made no attempt to evaluate any evidence disclosed in this matter under the relevant standard, and no argument as to how defendants here might be joint employers. (*See* Pl. MOL, *generally*.) Again, while Plaintiffs inexplicably treat this issue as already resolved in their favor, from a plain reading of this Court's prior holdings in this matter, whether Chestnut Holdings jointly employed Plaintiffs with any ownership entity is not only an open, undecided question, *it is also a critical threshold finding prior to any determination before any collective could be conditionally certified or notice issued*. (Opinion & Order, ECF Dkt. No. 52, p. 5.) Given Plaintiffs' failure to advance any argument or marshal any evidence addressed to what this Court has already found to be a threshold question as to who "employed" Plaintiffs, Plaintiffs motion to conditionally certify a collective is fatally premature and must be dismissed.

Finally, because Plaintiffs failed to meaningfully address the joint employer issue, or offer any serious argument as to how Chestnut Holdings employed Plaintiffs, this Court should not permit them to do so in their reply. A court "generally [does] not consider issues raised in a reply brief for the first time because if [a party] raises a new argument in a reply brief [the opposing party] may not have an adequate opportunity to respond to it," *Lin v. Joedy*, 214 F. Supp. 3d 207, 219 n. 6 (W.D.N.Y. 2016), *citing In re Harris*, 464 F.3d 263, 268 n.3 (2d Cir. 2006).

### B. Should This Court Consider the Issue, *Sua Sponte*, Plaintiffs Fail to Plead or Allege Facts Sufficient to Establish a Joint Employer Relationship Under the FLSA.

While Plaintiffs should be barred from addressing joint employment in reply on the instant application for their failure to address the issue in their initial motion papers, should the Court consider the issue, *sua sponte*, the record does not support any finding of joint employer relationship under the FLSA. "An entity 'employs' an individual under the FLSA" if it "'suffer[s]

or permit[s] that individual to work.'" *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 66 (2d Cir. 2003) (*quoting* 29 U.S.C. § 203(g)); *see also* 29 U.S.C. § 203(d) (defining "employer" as "any person acting directly or indirectly in the interest of any employer in relation to an employee"). A company suffers or permits a person to work only where that company functions as the person's employer as a matter of "economic reality." *See Goldberg v. Whitaker House Coop, Inc.*, 366 U.S. 28, 33 (1961); *Barfield v. New York City Hlth. and Hosp. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008). Courts in this Circuit evaluate "economic reality" by considering a series of factors for determining whether an entity has either formal or functional control over an individual. The "formal" control analysis examines whether the defendant: (1) had the power to hire and fire the employee; (2) supervised and controlled the employee's work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained the employee's employment records. *Id*. at 142. The "functional" control factors include, *inter alia*, (l) whether an employee shifted from one putative employer's business premises to that of another; (2) the degree to which the several defendants' agents supervised the work; and (3) whether the plaintiff worked exclusively for one defendant. *Id*. at 143. No one single factor is determinative. *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d. Cir. 1999).

Plaintiffs fail to supply any specific probative factual allegations that might permit assessment of these criteria. Although alone not solely dispositive, plaintiff Jack appears to concede that he was "formally employed" by 1742-1746 Union LLC, not by Chestnut Holdings. (Jack Decl., ¶ 3). De La Rosa likewise avers that he was "formally employed" by another entity, 1288 LLC. (De La Rosa Decl., ¶ 3). As to whether Chestnut Holdings may also have "jointly" employed Plaintiffs, the declarations and the Complaint offer only a boilerplate recitation, upon information and belief, that their respective employers (that is, the building's respective owners)

- 11 -

and Chestnut Holdings "ha[ve] interrelated operations, common management and ownership, and centralized control of labor relations with all of the buildings [managed by Chestnut Holdings]." (*See.* De La Rosa Decl., ¶ 3; Jack Decl., ¶ 3; *cf.* Complaint, ¶ 24.) However, a bare recitation of the legal standard, unsupported by concrete factual allegations, is inadequate to plead that a given individual was an "employer" of a plaintiff. *See, e.g., Bravo v. Established Burger One, LLC*, No. 12-cv-9044 (CM), 2013 WL 5549495, at *7 (S.D.N.Y. Oct. 8, 2013) (dismissing claims against defendants against whom plaintiffs "allege[d] no specific facts, aside from the elements of the economic realities test") (*quotation marks omitted*); *Cannon v. Douglas Elliman, LLC*, No. 06-cv-7092 (NRB), 2007 WL 4358456, at *5 (Dec. 10, 2007) ("[B]eyond reciting the elements of a joint employer arrangement, plaintiffs have not shown that [defendant] did, in fact, play a role in supervising plaintiffs' work").

The only two non-boilerplate allegations to which Plaintiffs oblique refer in summarily concluding that Chestnut "employed" them jointly with their respective building's owners are: (1) "[s]uperintendents employed by Defendants filled out applications printed on Chestnut Holdings letterhead" (Pl. MOL, p. 3, *citing* Menken Decl., Exs. 6-7); and (2) "Chestnut employees signed applicants' I-9 forms under the 'Employer or Authorized Representative' field and listed Chestnut Holdings as the 'Employer's Business or Organization Name'" (Pl. MOL, p. 3, *citing* Menken Decl., Exs. 6-7). Neither of these allegations are sufficient as a matter of law to establish an "employment" relationship between Plaintiffs and Chestnut Holdings. The use of letterhead and similar superficial designations on employment forms and publications has been held insufficient to plausibly allege joint employment for purposes of conditional certification of a collective. *See Taveras v. D & J Real Estate Mgmt. II, LLC*, 324 F.R.D. 39, 41 (S.D.N.Y. 2018). In the same way, in evaluating whether an entity "controls" a worker for purposes of determining whether that entity "employed" the worker, "it is not significant how the parties defined the employment relationship or how the worker [is] identified [...]

on tax forms." *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 924 (S.D.N.Y. 2013), *citing Hernandez v. Chefs Diet Delivery, LLC*, 81 A.D.3d 596, 599 (2d Dep't 2011).

The supporting declarations fail to set forth allegations sufficient to meaningfully assess the majority of the "economic reality" and "control" factors, despite the extensive discovery undertaken in this case. Plaintiffs have not yet deposed the supervisors of any Defendant, and have offered no documentary evidence or non-conclusory allegations concerning any of the "formal" or "functional" factors, or the extent to which these factors was shared between the different ownership entities and Chestnut Holdings. Particularly troubling is the fact that Plaintiffs fail to set forth any plausible, non-conclusory allegations sufficient to assess, as to Plaintiffs or any other putative member of the collective: (1) who had hiring and firing authority; (2) who actually supervised or controlled work schedules or other conditions of employment; (3) who determined rates and methods of compensation; (4) who maintained employment records; or (5) who issued pay. In the absence of any meaningful factual aspersions that might permit this Court to evaluate any of these issues, whether Chestnut Holdings or any building owners were joint employers remains an open, unresolved question, and conditional certification cannot be made on this record.

Finally, as to defendant Wiener, the only allegations that pertain to him assert that he had an ownership interest in the entities that owned the buildings. (*Cf.* De La Rosa Decl., ¶ 3; Jack Decl., ¶ 3) Notwithstanding that Defendants dispute this contention, merely having an ownership interest in an entity does not make an individual an employer. *See, e.g., Irizarry v. Catsimatidis*, 722 F.3d 99, 111 (2d Cir. 2013) ("Ownership or a stake in a company, is [alone] insufficient to establish that an individual is an 'employer.'"); *Hernandez v. Habana Room, Inc.*, No. 11-cv-1264 (RMB) (JCF), 2012 WL 423355, at *3 (S.D.N.Y. Feb. 9, 2012) ("merely having an ownership interest in the employer entity is insufficient to establish individual FLSA liability [...]"). Nothing

- 13 -

before the Court on this motion could conceivably permit a finding that Wiener was Plaintiffs

employer.

III.   **Plaintiffs' Purely Conclusory Allegations in Their Supporting Declarations Fail to Satisfy Their Burden to Allege With Proper Specificity that There Were Similarly Situated Persons with Regard to Any Alleged FLSA Claim.**

Notwithstanding Plaintiffs' stark failure to meaningfully address the unresolved, threshold

issue of whether Chestnut Holdings jointly employed Plaintiffs, Plaintiffs also fail to produce any

evidence of a factual nexus between the relevant personal circumstances of their own claimed

FLSA minimum wage and overtime violations, and those of any other superintendents employed

at the buildings managed by Chestnut Holdings. Accordingly, they have failed to meet their burden

under § 216(b), and this Court should exercise its discretion not to conditionally certify or issue notice

to any proposed collective.

A.   **Plaintiffs Fail to Sufficiently Detail That Similarly-Situated Persons Were Paid Less than $7.25 per Hour.**

Plaintiffs' first cause of action alleges a FLSA collective claim for the alleged non-payment

of the statutory minimum wage rate. (Complaint, ¶¶ 87-94.) The maximum limitations period for

willful FLSA violations for purposes of the Court's consideration of Plaintiffs' motion is three (3)

years. Notwithstanding that Plaintiffs will not be able to establish, and Defendants expressly deny,

that any claimed violation was willful, in each of the past three years (and, indeed, since July 24,

2009), the FLSA minimum wage rate has been $7.25 per hour. 29 U.S.C. § 206(a).

Of the four declarations submitted by resident superintendents who allege to have been

managed by Chestnut Holdings, two do not allege that they were paid less than $7.25 per hour.

The Nieves Declaration contains no claim at all that he was paid less than the minimum wage. (*See*

Nieves Decl., *generally*.) Moreover, Nieves does not indicate how many hours he worked in any

particular week, what specific wage he received, if any, or otherwise provide any basis for inferring

that he was ever paid less than the minimum wage of $7.25 for each hour worked. (*Id.*) Likewise, the Jack Declaration does not allege a minimum wage violation, even as to himself: Jack contends he worked "a total of fifty-eight scheduled work hours per week" (Jack Decl., ¶ 7), but that he was "paid a flat weekly salary" that was never less than $457.60 per week (Jack Decl., ¶ 8). By Jack's own admission, he received at least $7.88 per hour, more than fifty cents per hour over the minimum wage for the entire period of his alleged employment. *Cf.* 29 U.S.C. § 206(a).

Notwithstanding that these two supporting declarations are thus patently insufficient to state a minimum wage claim on behalf of their own declarants, let alone any other individual, none of the four supporting declarations carry Plaintiffs' burden to support conditional certification and issuance of notice at this stage. While the Huggins and De La Rosa Declarations contain factual assertions that, read in their most favorable light for purposes of this motion, *may arguably support these plaintiff's own individual claims* that Defendants allegedly failed to pay *them* the federal minimum wage for all hours worked, each of the declarations fail to make any showing that the same was true *for any other potential opt-in plaintiffs*. There is no allegation in any of the declarations that provides any probative information sufficient to infer whether any allegedly similarly-situated employee was ever paid less than the federal minimum wage for any hours worked.

Both the De La Rosa Declaration and the Nieves Declaration make no reference to any other alleged employees whatsoever, and speak instead solely to the declarants' own particular circumstances. (*See* De La Rosa Decl., *generally*; Nieves Decl., *generally*.) Their declarations are thus patently insufficient as a matter of law to support any finding that other employees were similarly situated victims of an illegal policy or plan. *Bondi v. New Rochelle Hotel Assocs.*, No. 17-cv-5681(KMK)(LMS), 2018 WL 7246962, at *8 (S.D.N.Y. Dec. 7, 2018), *report and*

*recommendation adopted*, No. 17-cv-5681 (KMK), 2019 WL 464821 (S.D.N.Y. Feb. 6, 2019)

(denying conditional certification where finding that plaintiffs had failed to support their claims

"with a factual showing that extends beyond their own circumstances").

While the other declarations fare marginally better as to other employees, the Huggins

Declaration alleges only as follows:

> I have spoken with a superintendent named Jose, whose last name I do
> not know, who works at 1414 Wythe Place in the Bronx (a building
> owned and managed by Defendants), who confirmed he was also
> required to work more than forty hours each workweek, but that
> Defendants never compensated him with overtime pay at any rate for the
> hours that he worked in excess of forty per week, *or at the minimum
> wage for all hours worked*. […] I heard the same complaint from a
> superintendent named Edwin, whose last name I do not know, who
> works at 1115 Jerome Avenue in the Bronx, another building owned and
> managed by Defendants.

(Huggins Decl., ¶¶ 13-14.) The Jack Declaration sets forth an almost identically phrased,

boilerplate claim:

> [I]n or around February 2019, I spoke to Ernest Gilbert, the former
> superintendent of Defendants' apartment building located at 1746
> President Street, Brooklyn, New York, who confirmed that he was also
> required to work more than forty hours each workweek, but that
> Defendants never compensated him with overtime pay at any rate for the
> hours that he worked in excess of forty per week, *or at the minimum
> wage for all hours worked*. […] I had similar discussions in or around
> March of 2019 with Alex [Last Name Unknown], the superintendent of
> Defendants' building located at 883 Franklin Avenue, Brooklyn, New
> York and in or around April 2019 with Atwell [Last Name Unknown],
> the superintendent of Defendants' buildings located at 1402 and 1408
> Sterling Place, Brooklyn, New York.

(Jack Decl., ¶¶ 11-12.) These declarations are precisely the type of vague, conclusory allegations,

lacking any probative detail of the hours allegedly similarly situated employees worked or wages

paid, that courts in this district have routinely found do not warrant issuing notice or conditional

certification. *See*, *e.g.*, *Sanchez v. JMP Ventures, L.L.C.*, No. 13-cv-7264 (KBF), 2014 WL

465542, at *2 (S.D.N.Y. Jan. 27, 2014) (rejecting conditional certification where the plaintiff's

conversations with other employees failed to include a minimum level of probative detail); *Reyes v. Nidaja, LLC*, No. 14-cv-9812 (RWS), 2015 WL 4622587, at *3 (S.D.N.Y. Aug. 3, 2015) (same result).

As a practical matter, despite the complete lack of specific, probative details—such as number of hours any alleged comparator worked in any given pay period, or the comparator's rate of pay—as unequivocally demonstrated in their declarations, the fact remains that two of the four declarants do not and cannot claim or allege that they were paid less than $7.25 per hour such that they might themselves state a plausible minimum wage claim under the FLSA (*See* Nieves Decl., *generally*; Jack Decl., ¶¶ 7-8.) Plaintiffs' failure to claim nonpayment of the minimum wage as to even all four declarants warrants denial of any application to certify a conditional class and issue notice for two reasons. First, in the absence of even a simple majority among this tiny sample of resident superintendents that could plausibly allege they were paid less than the minimum wage, any inference that there was a uniform or "common" policy to pay *all superintendents* less than the minimum wage under the FLSA is eviscerated. Second, as at least half of the identified declarants themselves are not candidates by their own admissions to opt-into the proposed collective on this cause of action, these four declarations fail to be probative as to the existence of similarly situated possible opt-in employees.

Plaintiffs burden at this stage is to provide evidence of a factual nexus between their circumstances and those to whom they claim to be similarly situated. *See Prizmic*, *supra*, No. 05-cv-2503(DLI)(MDG), 2006 WL 1662614, at *2. Relative to their first cause of action alleging failure to pay minimum wage under the FLSA, Plaintiffs' supporting declarations do not even plausibly allege that all four declarants were similarly situated with respect to a common policy that violates the FLSA, and any allegations concerning other employees is improperly conclusory.

Under these circumstances, this Court should decline to exercise its discretion to conditionally certify a collective and issue notice relative to an FLSA minimum wage claim.

> **B.      Similarly, Plaintiffs Fail to Identify Any Similarly-Situated Persons Subject to a Common Policy Not to Be Paid Overtime.**

As to Plaintiffs' second federal cause of action, their claim that Defendants failed to pay them overtime compensation within the meaning of the FLSA (*see* Complaint, ¶¶ 95-98), Plaintiffs have also provided only general, uncorroborated assertions lacking detail sufficient to support conditional certification and issuance of notice. Aside from purely conclusory allegations, there is simply no common factual nexus between Plaintiffs' highly individualized circumstances and any other prospective individuals they may attempt to claim are similarly situated with respect to a common policy.

At the outset, and for all the same reasons that the supporting declarations were insufficient relative to the FLSA minimum wage claims, the declarations likewise fail to provide any probative information—that is, approximate hours worked, approximate weekly pay—sufficient to reasonably assess whether any allegedly similarly situated employees did not receive an overtime premium for hours worked beyond forty in a workweek. *See Ji Li v. Ichiro Rest. Inc.*, No. 14-cv-10242 (AJN), 2015 WL 6828056, at *4 (S.D.N.Y. Nov. 5, 2015) (denying conditional certification where supporting affidavits failed to provide a minimum level of relevant detail regarding the contents conversations with coworkers); *Huertero-Morales*, *supra*, No. 17-cv-2429, 2017 WL 4046337, at *3 (denying certification where plaintiff alleged conversations with five other employees but did not provide any specifics about the conversations); *Ikikhueme v. CulinArt, Inc.*, No. 13-cv-293 (JMF), 2013 WL 2395020, at *2 (S.D.N.Y. June 3, 2013) (denying conditional certification where plaintiff offered only his single declaration with "unsupported assertions" and no specific information about other employees).

Moreover, and critically, all four declarants worked in separate residential apartment buildings. None allege there were any other employees managed by Chestnut Holdings personnel staffed in their respective buildings (*see*, *e.g.*, Complaint, ¶ 58), or that they had occasion to visit any other residential building when another superintendent was on duty.[2] As a result, none of the individual declarants could plausibly allege from personal observation the working conditions of any of the other declarants, nor could they plausibly have witnessed the schedules or hours worked of any other employees. While first-hand observations supporting the existence of similarly situated prospective opt-ins is not strictly required at this stage, in the absence of any first-hand information from any of the declarants concerning any employees other than themselves, this Court should decline to exercise its discretion to conditionally certify a collective and issue notice as to any FLSA overtime claim. *See*, *e.g.*, *Barfield v. N.Y. City Health & Hosps. Corp.*, No. 05-cv-6319 (JSR), 2005 WL 3098730, at *1 (S.D.N.Y. Nov.18, 2005) (denying conditional certification where the plaintiff alleged, based only on "limited anecdotal hearsay," that other nurses at other locations were not paid overtime); *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 355-56 (E.D.N.Y. 2008) (granting conditional certification only as to location where plaintiffs worked because allegations about other locations were based on hearsay and unreliable statements).

Even as to those few buildings were the declarants might be able to allege personal knowledge as to probative facts of their claims—1425 University Avenue (Huggins Decl., ¶ 2); 1742-1746 Union Avenue (Jack Decl., ¶ 3); 1746 President Street (Jack Decl., ¶ 3); 1288-1292 Washington Avenue (De La Rosa Decl., ¶ 8); and 975 Sherman Avenue (Nieves Decl., ¶ 2)—they fail to show that the circumstances of their employment in these buildings was sufficiently similar

---

[2]     Jack alleges that, for a period between December of 2018 and February of 2019, he was assigned to work at a residential building at 1746 President Street, Brooklyn, New York, as a substitute superintendent (*see* Jack Decl., ¶ 5), filling in to relieve another superintendent who was off duty (*id.*). From this allegation, Jack necessarily would not have occasion to observe another superintendent at work.

to create an identifiable, factual nexus sufficient to bind their claims together. *See Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 460 (E.D.N.Y. 2014) ("[p]laintiffs must provide "'actual evidence of a factual nexus between [their] situation and [the persons] [t]he[y] claim[ ] are similarly situated.'") (*citing Guillen v. Marshalls of MA, Inc.*, 841 F.Supp.2d 797, 801 (E.D.N.Y. 2012)). As to the four declarants, their allegations concerning their scheduled hours vary wildly, with no two individuals alleging that they worked at the same scheduled times. (*Cf.* Huggins Decl., ¶ 5; Jack Decl.,¶ 7; De La Rosa Decl., ¶ 11.) The declarations do not show that there was a consistent policy or practice with regard to scheduling superintendent's active duty time across the five properties, or even the range of hours or days of the week superintendents were expected to work. (*Id.*) Similarly, none of the four declarants provide consistent allegations as to their alleged weekly wages, which varied across a range of more than one hundred dollars per week between the lowest and highest alleged wage. (*Cf.* Huggins Decl., ¶ 11; Jack Decl., ¶ 11; De La Rosa Decl., ¶ 11.) Nor do the declarations permit any inference of similar supervision or management: Huggins alleges he was supervised by Zohar Yaish (Complaint, ¶ 71); Jack claims to have been supervised by property managers Ian Stowe and Fidel Herrera (Jack Decl., ¶ 3); De La Rosa alleges he was supervised by property managers Manuel Felix and Guillermo Perez (De La Rosa Decl., ¶ 3); and Nieves does not provide any information concerning supervision. (*See* Nieves Decl., *generally*.)

"Even though plaintiffs are certainly not required to show that they are identically situated, or that they possess the same attributes with respect to their job, they are required to show that they are subject to the same common policy or plan by defendants." *Cano v. Four M Food Corp.*, No. 08-cv-3005 (JFB) (AKT), 2009 WL 5710143, at *9 (E.D.N.Y. Feb. 3, 2009). Plaintiffs' supporting declarations fail to do so here. As the supporting declarations cannot carry Plaintiffs' burden to show "'some identifiable factual nexus which binds the named plaintiffs and potential

class members together as victims […],'" *Jenkins v. TJX Cos. Inc.*, 853 F.Supp.2d 317, 322 (E.D.N.Y. 2012), this Court should decline to exercise its discretion to conditionally certify a collective and issue notice relative to an FLSA overtime claim.

Finally, and notwithstanding the patent insufficiency of Plaintiffs' supporting declarations, as a practical matter, proceeding as a collective on any FLSA overtime claims does not serve judicial efficiency: all declarants worked different shifts, over different workweeks, earning different wages, in separate buildings, reporting to different supervisors. Given how dissimilar their alleged circumstances are, litigating their wage and hour claims as a collective would not streamline the process or serve judicial efficiency, and this Court should exercise its discretion not to issue notice. *See Lijun Geng v. Shu Han Ju Rest. II Corp.*, No. 18-cv-12220 (PAE)(RWL), 2019 WL 4493429, at *9 (S.D.N.Y. Sept. 9, 2019) ("[i]n utilizing their discretion to approve the details of notice, courts should consider the overarching policies of the notice provisions of Section 216(b) […] which include achieving judicial efficiency and lowering individual costs for plaintiffs.") (*internal citations omitted*).

## IV.    Not Only Have Plaintiffs Failed to Make the Requisite Showing of a Factual Nexus to Warrant Conditional Certification, But Their Intended Notice Is Also Defective.

Defendants maintain that Plaintiffs' motion for conditional certification of a collective and issuance of notice must be denied for their failure to resolve the threshold factual question of joint employment, for their failure to meet their burden to supply relevant, probative facts of their claims so as to create a factual nexus to any similarly situated superintendents. Moreover, Plaintiffs' proposed collective designation and proposed notice are both defective for the following reasons: (1) to the extent Plaintiffs have proposed a collective of "all […] current and former employees who worked for Defendants as superintendents," there is no factual nexus between non-resident superintendents, and Plaintiffs and the declarants, all of whom were resident employees; (2) the

maximum applicable statute of limitations for Plaintiffs' claims brought pursuant to § 216(b) is three years; (3) issuance of notice by email or text is not warranted; and (4) there are no extraordinary circumstances warranting tolling of any applicable statute of limitations.

### A. There Is No Basis to Conditional Certify a Collective As to Non-Resident Supers Who Did Not Live in the Building Where They Worked.

Plaintiffs have alleged that, while they were provided with an apartment to reside in at the buildings where they worked, they were also required to be "on-call" at all hours of the day, every day of every week. (Huggins Decl., ¶¶ 6-8; Jack Decl. ¶ 7.) Determination of whether this "waiting" or "on-call" time for superintendents who reside at their employer's premises constitutes compensable time sufficient to sustain a violation of the FLSA requires an in-depth scrutiny of 29 C.F.R. §§ 785.14-785.17 and 785.23. In contrast, while no non-resident superintendents submitted declarations in support of the instant motion, for non-resident employees, whether "waiting" / "on-call" time is compensable is governed by, *inter alia*, 29 C.F.R. §§ 785.11 and 785.24-785.26. For resident superintendents who allege they were always "on-call," the determination of "preliminary" or "postliminary" is immaterial to their allegations. As such, these different defenses prevent conditional certification of a putative collective containing non-resident superintendents. *See*, *e.g. Warman v. Am. Nat'l Standards Inst.*, 193 F. Supp. 3d 318, 325 (S.D.N.Y. 2016); *Jeong Woo Kim v. 511 E. 5th St., LLC*, 985 F. Supp. 2d 439, 451 (S.D.N.Y. 2013). Given these and other disparities in alleged FLSA violations, and the application of other defenses, non-resident superintendents cannot be included within the collective as a matter of law. *See, e.g., Sanchez*, *supra*, No. 13-cv-7264 (KBF), 2014 WL 465542, at *1-2; *Reyes v. NY F&B Services, LLC*, No. 15-cv-882(LTS)(DCF), 2016 WL 796859, at *4 (S.D.N.Y. Feb. 22, 2016).

**B.**     **The Proposed Notice Is Defective in Not Being Limited to the Three-Year Period Immediately Preceding the Filing of the Complaint.**

Plaintiffs seek to provide notice to putative collective members employed by any of the Defendants within six years prior to the filing of the Complaint. (Pl. MOL, Pt. IV.E, pp. 14-15). Plaintiffs seek conditional certification and issuance of notice pursuant to 29 U.S.C. § 216(b), and thus solely as to two alleged causes of action under the FLSA. Where, as here, a proposed Notice concerns litigation of FLSA claims only, the appropriate limitation of time is three years from the filing of the Complaint. *See, e.g., Lira v. Eagle Open Kitchen LLC*, No. 14-cv -2356 (KBF), 2014 WL 7910482, at *2 (S.D.N.Y. July 14, 2014); *Sanchez v. El Rancho Sports Bar Corp.*, No. 13-cv-5119 (RA), 2014 WL 1998236, at *4 (S.D.N.Y. May 13, 2014). The weight of authority in this district consistently holds that any notice concerning collective actions under the FLSA must be limited to the three years prior to the filing of the Complaint, denying applications seeking a longer, six-year period. *See, e.g., Reyes, supra*, 15-cv-882(LTS)(DCF), 2016 WL 796859 at *2; *Paguay v. Barbasso, Inc.*, No. 11-cv-6266 (LTS)(HBP), 2012 WL 2914288, at *3 (S.D.N.Y. July 17, 2012); *Urtubia v. Ba Victory Corp.*, 857 F.Supp.2d 476 (S.D.N.Y. 2012).

**C.**     **Only Notice by Mail Is Indicated, and Plaintiffs Fail to Identify Any Need for Notification via Text Message and/or Email.**

Defendants further object to Plaintiffs' proposed text message notice (Menken Decl., Exs. 10, 11) and an undefined e-mail notice. Plaintiffs have failed to identify the necessity of notification via text message and/or e-mail. "'Historically, first class mailing has been utilized because it provides a controlled method by which individual notification can be provided through a reliable process which ensures that proper notice is received by the potential class members.'" *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 91 (E.D.N.Y.2007) (*quoting Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623, 630 (D.Colo. 2002)). Courts in this Circuit have held that electronic notices such as text or email, in contrast, "heightens the risk that the communication will be reproduced to large

numbers of people who could compromise the integrity of the notice process […] [and] […] could be forwarded to nonclass members and posted to internet sites with great ease." *Sharma*, *supra*, 52 F. Supp. 3d at 463. Here, Plaintiffs have articulated no basis for departing from the standard issuance of notice via first-class mail, and any request for issuance of notice via email or text message should be denied.

> **D.   Plaintiffs Are Not Entitled to Equitable Tolling, an Extraordinary Remedy Not Warranted Herein.**

Finally, Plaintiffs request that the otherwise applicable statute of limitations be tolled over the period from October 30, 2018 until the Court decides the instant motion. (*See* Pl. MOL, Pt. IV.H, p. 18-22 (*citing Kassman v. KPMG LLP*, No. 11-cv-03743 (LGS), 2015 WL 5178400 (S.D.N.Y. Sept. 4, 2015)). Applications to equitably toll statutes of limitation are disfavored, and federal courts equitably tolls limitations periods sparingly and only in rare and unusual circumstances. *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96 (1990); *Zerilli–Edelglass v. New York City Transit Auth.,* 333 F.3d 74, 80 (2d Cir. 2003); *Barrett v. Forest Labs., Inc.*, No. 12-cv-5224, 2015 WL 4111827, *2 (S.D.N.Y. July 8, 2015) ("'Because statutes of limitations protect important social interests in certainty, accuracy, and repose, equitable tolling is considered a drastic remedy applicable only in rare and exceptional circumstances.'") (*quoting A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011)). "A litigant seeking equitable tolling bears the high burden of establishing both '(1) that [s]he has been pursuing [her] rights diligently; and (2) that some extraordinary circumstance stood in [her] way.'" *Barrett, supra*, 2015 WL 4111827, at *3 (*quoting Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005)).

Plaintiffs have entirely failed to allege the existence of any extraordinary circumstance, or that any such claimed circumstance prevented them from diligently pursuing their rights in this matter. The only sources of delay that Plaintiffs have identified are the entirely ordinary operations of the litigation process: Defendants' objections, made in good faith, to certain requests in discovery regarding the still

unresolved issue of joint employment; and this Court's decision on Plaintiff's motion to compel, which denied the motion in part and instead ordered limited, phased discovery relative to the disputed requests. (Pl. MOL, Pt. IV.H, p. 20-22.) From the filing of Plaintiff's motion to compel, on or about November 28, 2018 (*see* Dkt. No. 42), until this Court decided the motion and ordered additional discovery on or about June 25, 2019 (*see* Dkt. No. 52) was approximately seven months. Such a limited delay, attributable to routine events in litigation, cannot be said to constitute an "extraordinary" circumstance sufficient to justify tolling in equity. Moreover, as Plaintiffs have produced virtually no materials from the later produced disclosures in support of this motion, and entirely failed to advance any argument concerning the disputed joint employment issue that predicated Defendants' objections (*see*, *supra*, at Pt. II.A), Plaintiffs have failed to show these materials were necessary to make the instant motion, or that they could not have pursued their rights more diligently in earlier seeking conditional certification.

## **CONCLUSION**

For the reasons set forth above, Defendants respectfully request that Plaintiffs' Motion for Conditional Certification, Leave to Distribute Notice, Disclosure of Contact Information and Equitable Tolling Pursuant to 29 U.S.C. Section 216(b) be denied in its entirety.

Dated:   New York, New York
         November 18, 2019

Respectfully Submitted,

CLIFTON BUDD & DeMARIA, LLP
*Attorneys for Defendants*

By:   _____
      Daniel C. Moreland
      Stephen P. Pischl
      350 Fifth Avenue Suite 6110
      New York, NY 10118
      (212) 687-7410 (tel)
      (212) 842-5205 (fax)
      dcmoreland@cbdm.com
      sppischl@cbdm.com