UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x
ALEJANDRO HUGGINS, *on behalf of himself and others similarly situated*,

          *Plaintiff, and Lead Plaintiff for the Proposed Class*

   -v.-

CHESTNUT HOLDINGS OF NEW YORK INC.; 1425 U LLC; and JONATHAN WIENER,

          *Defendants.*
------------------------------------------------------------------------ x

Case No. 1:18-cv-01037 (PAC)

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO STRIKE

CLIFTON BUDD & DEMARIA, LLP
*Counsel for Defendants*
350 Fifth Avenue Suite 6110
New York, NY 10118
(212) 687-7410 (tel.)

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT**..................................................................................................... 1

**STATEMENT OF FACTS**............................................................................................................ 2

**ARGUMENT** ................................................................................................................................ 4

    **I.**    **The Applicable Standard in Reviewing a Motion to Strike Untimely Consent Forms Requires Late Opt-Ins to Show Good Cause for Failing to Timely File in Compliance with This Court's Order.**.................................................. 4

    **II.**    **The Late Opt-ins Not Only Fail to Show Good Cause for Their Inability to Comply with this Court's Second Extended Deadline, They Fail to Submit *Any* Evidence Sufficient to Assess Good Cause and Their Opposition Is Fatally Deficient.**............................................................................................................ 6

    **III.**    **Defendants Will Be Prejudiced by the Late Opt-ins' Participation.** ......................... 8

**CONCLUSION**............................................................................................................................. 9

**PRELIMINARY STATEMENT**

Defendants Chestnut Holdings of New York, Inc. ("Chestnut Holdings"), 1425 U LLC and Jonathan Wiener ("Wiener" and, collectively with Chestnut Holdings and 1425 U LLC, "Defendants") request that this Court strike as untimely three late-filed consents to join this action and dismiss the claims of three putative opt-in plaintiffs, Noberto Rozon, Jose Alcantara and Andres Rodriguez (collectively, the "Late Opt-ins"), without prejudice. All three Late Opt-ins filed their form consents significantly after either this Court's original or its second, extended deadline. The Late Opt-ins failed to seek leave from the Court prior to making their untimely filings. Notwithstanding that this Court heard preliminary argument concerning Defendants' motion to strike at a pre-motion conference, to date, the Late Opt-ins have failed to offer any serious explanation for their inability to adhere to the deadlines set by this Court, nor submitted any evidence whatsoever that might explain their untimeliness or permit this Court to conduct a valid good cause analysis. Plaintiffs' counsel made no evidentiary showing in opposition to Defendants' application, merely providing token excuses for each of the Late Opt-ins in a footnote and promising to supply affidavits explaining the late filing if requested by the Court. Even accepting the Late Opt-ins' purported "excuses" as true for the purposes of this motion, their claimed explanations for their delay still do not constitute good cause that would permit them to file untimely consent forms.

This Court has been extremely gracious to the putative members of the collective, including the Late Opt-ins, and provided more than adequate opportunity to learn of this matter and confirm their intent to participate. Among other considerations, this Court (1) permitted notice by both first-class mail and via text; (2) significantly extended the original notice period and set a second deadline; (3) permitted Plaintiffs' counsel to make phone contact with the entire putative collective in the interim to confirm their address for mailing; and (4) allowed notices to be re-mailed after such contact. Notwithstanding these multiple opportunities afforded to Plaintiffs' counsel to send notice and to advise

interested individuals of the procedure to join the suit, the Late Opt-ins still failed to adhere to either the Court-imposed first or second, extended deadline.

From November 4, 2020, when notice was served on the putative collective via first-class mail and via text message, and the final, extended deadline of February 18, 2021, the Late Opt-ins had three months and fifteen days to complete their notice of their intent to join this matter and timely file them with this Court. Should the Court decline to police its rulings here by excusing the untimely notices, filed without leave, and grant a third extension of the original deadline on behalf of the Late Opt-ins, there can be no serious argument that Defendants will not be prejudiced. Not only will such laxity make Court-imposed deadlines essentially meaningless and suggest an inequitable application of this Court's rules, but Defendants will also be prejudiced by delay. Defendants served document requests and interrogatories on those opt-ins who timely filed their consent forms and have, as of this filing, received responses to those requests. Depositions in this matter have already been scheduled on consent, with the first such deposition scheduled to be held before this motion will even be fully briefed. Excusing the untimely filings would impede those plans and delay discovery without cause. The Late Opt-ins, in contrast, will suffer no prejudice from not participating in the putative collective action, as they would remain free to separately pursue their claims individually. Permitting the Late Opt-ins a third chance to join this matter after two missed deadlines would prejudice Defendants and render the Court's Orders meaningless.

Accordingly, Defendants now respectfully move to strike the untimely filed form consents to join this action and to dismiss without prejudice the Late Opt-ins' claims.

## STATEMENT OF FACTS

Briefly and by way of background, both in originally moving for conditional certification and again when seeking this Court's approval of the form of the notice (*see* Dkt. 62, p. 20-21; Dkt. 79, p. 3), Plaintiffs predicted that notice via first-class mail would be ineffective relative to the putative

collective members in this matter, including the Late Opt-ins, because resident superintendents, who necessarily move when starting a new job, are an itinerant population and "because Defendants['] [sic] superintendents used their personal cellular phones as their main means of communication while employed by Defendants." Dkt. 78, p. 3. Accordingly, and at Plaintiffs' specific request (and over Defendants' objection), this Court directed issuance of notice to the 172 identified members of the putative collective not only by mail, but also by text message to the members' mobile phone numbers as maintained in Defendants' records. Dkt. 98, p. 1-2. Notice via first-class mail and text was simultaneously served on November 4, 2020, and the initial deadline to file a consent to join this action expired on January 3, 2021. *See* Dkt. 92. *Despite there being no indication that any of the three Late Opt-ins did not receive the notice, whether by mail or by text, the Late Opt-ins missed this first filing deadline.*

Although there appeared to be no issues with receipt via the text message method, via letter-motion entered December 8, 2021, Plaintiffs complained that "137 of 172 mailed notices ha[d] been returned as undeliverable with no forwarding address." Dkt. 98, p. 2 (*emphasis added*). Under other circumstances, Plaintiffs might have pointed to this ratio of returned mailings as an indication that the prospective members of the collective had not been given adequate notice of the current action. Here, however, this rate of returned mailings was precisely what Plaintiffs expected, and why, as they earlier argued to this Court, "notice by text message is necessary and appropriate in this case […] [and] is the most effective means of reaching the superintendents who work for [Defendants]." Dkt. 79, p. 3. The consultant firm retained by Plaintiffs to administer notice has confirmed that only 21 of the 172 notices sent via text were not delivered successfully. *See* Dkt. 98, p. 2 fn. 1. There is no indication in the record before this Court that any of the three Late Opt-ins did not receive notice via text.

Nevertheless, on December 21, 2021, over Defendants' objection, this Court granted Plaintiffs' counsel the extraordinary opportunity *to contact by phone each member of the putative*

*collective*, including all three of the Late Opt-ins, to verify their mailing address, and further extended the opt-in period by 45 days, setting a second deadline of February 18, 2021. Dkt. 100. Upon information and belief, Plaintiffs' counsel's office did in fact speak with all three of the Late Opt-ins on or before January 14, 2021, thereby confirming that the mobile numbers to which notice had been sent by text had been accurate.

Following these phone calls, all three of the Late Opt-ins were also re-mailed notices on January 19, 2021, thirty days in advance of the second, extended deadline. *Despite their receipt of the notice via text, a call from counsel and the re-mailed notice, Late Opt-ins then missed the second, extended filing deadline as well*. Now, to the extent they oppose Defendants' application to strike, the Late Opt-ins essentially ask the Court for a third bite at the apple, despite having already missed two filing deadlines, without having first sought this Court's leave for late filing and without evidence of any excuse for the failure to timely file.

## **ARGUMENT**

**I.     The Applicable Standard in Reviewing a Motion to Strike Untimely Consent Forms Requires Late Opt-Ins to Show Good Cause for Failing to Timely File in Compliance with This Court's Order.**

Although the text of the FLSA is silent as to whether consent forms can be filed after a court-imposed deadline for filing notices of consent have passed, "in determining whether to strike opt-ins from an FLSA collective action because the consent forms were untimely filed, courts consider the following factors: (1) whether good cause exists for the late submissions; (2) prejudice to the defendant; (3) how long after the deadline passed the consent forms were filed; (4) judicial economy; and (5) the remedial purposes of the FLSA." *Benavidez v. Piramides Mayas Inc.*, No. 09-cv-5076 KNF, 2013 WL 1627947, at *3 (S.D.N.Y. Apr. 16, 2013), *citing Ruggles v. Wellpoint, Inc.*, 687 F.Supp.2d 30, 37 (N.D.N.Y.2009).

These factors alone are not strictly dispositive. Observing that the later two factors—judicial economy and the remedial purposes of the FLSA—will nearly always weigh in favor of allowing untimely consent forms, the balance of authority in this Circuit has been to permit untimely filing under the factored analysis <u>only where a putative opt-in can make a showing of good cause for their late filing</u>. *See Morangelli v. Chemed Corp.*, 275 F.R.D. 99, 122 (E.D.N.Y. 2011), *amended in part on reconsideration* (July 8, 2011) ("I am concerned that plaintiffs' well-worn efficiency argument—the notion that late filers should be joined because a new action will have to be filed—is becoming the "carte blanche to file additional consent forms […] the logical extension of not requiring good cause at all would make a court-imposed deadline prior to a decertification motion meaningless."); *see also Ruggles v. Wellpoint, Inc.*, 687 F.Supp. 2d 30, 38 (N.D.N.Y. 2009) (holding that where an extension for filing form consents had already been granted, the court will look unfavorably upon additional late opt-ins' requests in fairness to defendants). Several of this Court's colleagues within the Southern District of New York have also required a showing of good cause to allow for the filing of an untimely consent form. *See*, *e.g.*, *Alves v. Affiliated Home Care of Putnam, Inc.*, No. 16-cv-1593 (KMK), 2017 WL 511836, at *5 (S.D.N.Y. Feb. 8, 2017); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 452 (S.D.N.Y. 2011).

In addition to unequivocally failing to present evidence of good cause justifying the untimely filing, the Late Opt-ins opposition to Defendants' motion is deficient on several other fronts. Plaintiffs' counsel did not submit *any* evidence in opposition to Defendants' letter-motion for a pre-motion conference on this anticipated motion, effectively preventing this Court from undertaking a legitimate good cause analysis at all. Even accepting the Late Opt-Ins' so-called "reasonable excuses" as true for the purposes of this motion, their purported reasons for delay still

do not constitute good cause that would permit them to file untimely consent forms, as set forth at greater length herein.

**II.   The Late Opt-ins Not Only Fail to Show Good Cause for Their Inability to Comply with this Court's Second Extended Deadline, They Fail to Submit Any Evidence Sufficient to Assess Good Cause and Their Opposition Is Fatally Deficient.**

In their opposition to Defendants' request for a pre-motion conference on this anticipated motion, Plaintiffs' counsel did not include any affidavits from Late Opt-Ins attesting to their excuses for returning the consent forms late. For this reason alone the Court should find that good cause does not support the Late Opt-ins untimely filings. *See*, *e.g.*, *Ayers v. SGS Control Servs., Inc.*, No. 03-cv-9078 (RMB), 2007 WL 646326, at *5 (S.D.N.Y. Feb. 27, 2007) (declining to find good cause without affidavits); *Morangelli*, *supra*, 275 F.R.D. at 122 (requesting affidavits from late filers to "substantiate […] counsel's proffer, explaining the reasons for their lateness."). This is especially true here, given the varied, entirely unsupported excuses provided by the Late Opt-Ins. Plaintiffs' counsel's threadbare opposition in response to Defendants' application for a pre-motion conference on this motion simply fails to provide evidence that would allow the Court to evaluate the veracity of any Late Opt-ins' purported justification for delay or determine whether good cause exists for their delay. *See Moya v. Pilgrim's Pride Corp.*, No. CIV. 06-1249, 2006 WL 3486739, *1 (E.D. Pa. Nov. 30, 2006) (finding that the failure to explain the reason for the untimely return of the notice precluded a finding of good cause); *Saleem v. Corp. Transp. Grp., Ltd.*, No. 12-cv8450 (JMF), 2013 WL 6331874, at *3 (S.D.N.Y. Dec. 5, 2013) (examining seven affidavits provided by late opt-ins in order to evaluate good cause).

Plaintiffs' counsel also argue that the untimely consent forms were filed "within less than three weeks [sic]" of the second, extended deadline of February 28, 2021 (*see* Dkt. 119, p. 2), noting in a footnote that "Plaintiffs will submit affidavits indicating that (1) Norberto Rozon, whose consent form was filed eight days after the deadline on February 26, 2021, did not receive the consent form until after the February 18 deadline had passed because the form was sent to his previous address; (2) Jose

Alcantara, whose consent form was filed twelve days after the deadline, received the notice in January but was in the middle of moving and did not realize that the deadline was approaching; and (3) Andres Rodriguez, whose consent form was filed on March 8, 2021, eighteen days after the deadline, did not receive the notice until March 3." Dkt. 119, p. 2, fn. 1. Put simply: this collection of unsupported allegations is not evidence and could not possibly be used to manufacture good cause. *See e.g., Ayers*, No. 03-cv-9078 (RMB), 2007 WL 646326, at *5 (declining to find good where plaintiffs' counsel submitted an affidavit because the individuals themselves failed to submit evidence demonstrating good cause for their untimely filings); *Saleem v. Corp. Transp. Grp., Ltd.*, No. 12-cv-8450 (JMF), 2013 WL 6331874, at *2 (S.D.N.Y. Dec. 5, 2013) (examining seven affidavits provided by late opt-ins in order to evaluate good cause); *Morangelli*, 275 F.R.D. at 122.

As to Late Opt-ins Rozon and Rodriguez, who allegedly did not receive the mailed consent forms until after the filing deadline, there has been no explanation whatsoever as to *why* they did not ultimately receive these mailings, notwithstanding that they had confirmed with Plaintiff's counsel's office their mailing addresses and a second notice was mailed to them on January 19, 2021, fully thirty days in advance of the deadline. *Moya,* No. CIV. 06-1249, 2006 WL 3486739, *1 (dismissing attempt to opt in as untimely where she explained that she had moved prior to the mailing of the notice because "we have no way of knowing whether the fault of the delay lies with [plaintiff], for failing to obtain the mail sent to her old address, or with the Postal Service, for failing to timely forward her mail. Without further explanation, we cannot determine whether good cause exists for the untimely return of the notice.").

Similarly, with regard to Late Opt-in Alcantara, Plaintiffs' counsel appears to concede that he *received* the mailed second notice weeks in advance of the deadline, but a purported extraneous event—being in the middle of a move and failing to appreciate the approaching deadline—caused him

to fail to timely *return* his consent forms. Courts have found unpersuasive nearly identical excuses for violating a Court-ordered deadline. *See Saleem*, No. 12-cv8450 (JMF), 2013 WL 6331874, at *3, (finding that an opt-in whose wife misplaced the notice amounted to a "failure to keep track of [his] own affairs" and did not constitute good cause).

Even ignoring the insufficiency of the evidence, Courts have been particularly disinclined to permit late filing where, as here, plaintiffs have been afforded multiple opportunities to send notice and for interested individuals to join the suit. *Flood v. Carlson Restaurants Inc.*, No. 14-cv-2740(ATG)(WG), 2016 WL 3221146, at *8 (S.D.N.Y. June 7, 2016). Such is the case here, and the same result is compelled.

Given Plaintiffs' failure to provide any evidence in support of their motion, the Court should reject their request out of hand and refuse to permit any of the Late Opt-ins from filing their untimely consent forms. However, even if the Court entertains Plaintiffs' counsel's token opposition to Defendants' motion, no good cause exists for their inclusion in the collective action for the many reasons explained below.

### III. Defendants Will Be Prejudiced by the Late Opt-ins' Participation.

Defendants will be prejudiced by the Late Opt-ins' inclusion here: on the basis of the timely opt-ins that had been identified by the deadline, and prior to the challenged filings, the parties negotiated a schedule for discovery, and have subsequently completed document discovery and set a schedule to complete depositions relative to the identified participants. Excusing the untimely filings would impede those plans and needlessly delay discovery.

Plaintiffs now seek to add three additional opt-ins to the action. While this number may not seem significant in and of itself, despite the extensive consideration this Court has offered the putative opt-ins—by permitting service by multiple avenues, including both first-class mail and text message; significantly extending the original notice period and setting a second deadline; permitting Plaintiffs'

counsel to make phone contact with the entire putative collective; and allowing notices to be re-mailed after such contact—ultimately, *only 13 of the 172-member identified collective timely chose to participate in this action, a return rate of less than eight percent*. The three Late Opt-ins who now seek, without good cause, to be included in this matter will thus increase the total number of opt-ins by 25 percent. Under these circumstances, Defendants will assuredly be prejudiced by the proportionately significant increase in discovery costs attributable to this claim that will arise from their inclusion, and Plaintiffs cite no law that overcomes the good cause requirement based on some "*de minimis* number of opt-ins." As discussed *supra*, the fact that the Court has previously extended the opt-in period requires a much stricter examination of the record, and based on principles of fairness the Court should look unfavorably upon these additional late opt-in requests. *Morangelli*, 275 F.R.D. at 122; *Ruggles*, 687 F.Supp. 2d at 38.

This Court must police its plainly stated Orders or risk making them arbitrary and meaningless. The Late Opt-ins have been afforded more than adequate opportunity to receive notice and timely indicate their interest in participating in this action. Accordingly, we respectfully ask this Court to set a conference on a motion to strike the consent forms filed without leave by the Late Opt-ins and dismiss those individuals and their claims from this action without prejudice.

## CONCLUSION

Based on the foregoing and all of the papers submitted herein, Defendants' motion should be granted in its entirety, and this Court should strike the consent forms filed without leave by the Late Opt-ins, and dismiss those individuals and their claims from this action without prejudice.

Dated:   New York, New York
         April 12, 2021

Respectfully submitted,

CLIFTON BUDD & DEMARIA, LLP
*Counsel for Defendants*

By: _____
    Stephen P. Pischl