MENKEN SIMPSON & ROZGER LLP

80 PINE STREET, 33RD FLOOR
NEW YORK, NEW YORK 10005

TELEPHONE: (212) 509-1616
FACSIMILE: (212) 509-8088
WWW.NYEMPLOYEELAW.COM

BRUCE E. MENKEN
SCOTT SIMPSON
JASON J. ROZGER ⁺
BRENNA RABINOWITZ
RAYA F. SAKSOUK

⁺ ALSO ADMITTED NJ

ALAN SERRINS
OF COUNSEL

October 29, 2021

**<u>Via ECF</u>**
Hon. Paul A. Crotty
United States District Court
Southern District of New York
500 Pearl St., Chambers 350
New York, NY 10007

Re:    *Huggins v. Chestnut Holdings of New York, Inc., et al.*, Civ. No. 18-001037 (PAC)

Dear Judge Crotty:

  This firm represents the Plaintiffs in the above-captioned matter, and I write jointly with defense counsel to seek approval of the parties' agreed-upon settlement in this Fair Labor Standards Act ("FLSA") matter pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 824, 193 L. Ed. 2d 718 (2016). In this action, Plaintiffs, who were employed by certain of the Defendants as building superintendents, assert claims under the FLSA and New York Labor Law ("NYLL") for Defendants' failure to pay them minimum and overtime wages, and Defendants' failure to meet statutory notice and recordkeeping requirements pursuant to the NYLL.

  The procedural history of this case is well known to this Court. Alejandro Huggins commenced this action on February 6, 2018. Huggins brought allegations under the FLSA and NYLL on behalf of himself and similarly situated individuals that Defendants failed to pay their superintendents the statutorily required minimum and overtime wages and to comply with the NYLL's notice and record-keeping requirements. The case was conditionally certified as a collective action on May 29, 2020 (*see* ECF No. 72), and seventeen individuals opted into the FLSA collective. After significant discovery between the parties, named Plaintiffs Alejandro Huggins and Clinton Jack were deposed on May 20 and 21, 2021, respectively.

  This joint letter and attached exhibits represent the parties' submission in support of their proposed settlement. It is the result of an arms-length negotiation between the parties that comes

on the heels of over two and a half years of litigation, with an eye towards bringing this matter to a close and avoiding further complex and costly litigation through the remainder of discovery, a likely summary judgment motion, and trial. The proposed settlement would award the Plaintiffs a total of **$250,000.00**.

## I.     Fairness and Reasonableness of the Settlement

The proposed Settlement Agreement (the "Agreement"), with signatures from all eighteen Plaintiffs, is attached as Exhibit 1.[1] The settlement sum is $250,000.00, with $33^{1/3}$% of that sum, or $83,333.33 to be awarded as attorneys' fees, $4,710.44 in costs, and service awards of $7,500 and $5,000 to be distributed to the two named Plaintiffs, with the remaining $149,456.23 to be distributed among the collective members.

Under *Cheeks* and its progeny, a court should consider the totality of the circumstances, including but not limited to the below factors, in determining whether a proposed settlement is fair and reasonable:

> (1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion.

*Beckert v. Ronirubinov*, No. 15 CIV. 1951 (PAE), 2015 WL 8773460, at *1 (S.D.N.Y. Dec. 14, 2015) (*citing Wolinsky v. Scholastic Inc.,* 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)).

In this case, as a preliminary matter, the "agreement is the product of arms-length bargaining between experienced counsel" and involves no "possibility of fraud or collusion." *Id*.

Each individual's settlement share consists of a reasonable percentage of Plaintiffs' maximum recovery, and a substantial percentage of their allegedly unpaid wages. For example, in the damages calculation attached hereto as Exhibit 2, an earlier version of which was provided to Defendants during settlement discussions, Plaintiffs calculated that named Plaintiff Alejandro Huggins is owed $25,446.52 in unpaid wages and has a maximum possible recovery, including liquidated damages, of $58,393.04.[2] Not including the proposed service award to be allocated to him, Huggins will receive $15,882.18 under the settlement – approximately 62% of his alleged unpaid wages and approximately 27% of his maximum possible recovery. As another example, opt-in Plaintiff Andres Rodriguez has alleged $1,366.67 in unpaid wages and is calculated to have a maximum possible recovery of $10,883.33. He will receive $4,587.60 under the

---

[1] Exhibit 1 includes an English language and Spanish language version of the Agreement. To the extent the terms of the Spanish language version of the Agreement conflict with the terms in the English language version of the Agreement, the English language version of the Agreement shall control. Additionally, Section 2 of the settlement agreement has blank spaces for the Plaintiffs' addresses – Plaintiffs will be providing the addresses to defense counsel after final approval when payment is due.
[2] This does not include alleged damages for Huggins' individually-asserted retaliation claim based on his allegedly retaliatory termination.

settlement – over three times his claimed unpaid wages and roughly 42% of his maximum possible recovery. Notably, each individual will receive at minimum 60% of their alleged unpaid wages, with the median recovery being 87% of alleged unpaid wages. Since Defendants deny the allegations, the minimum potential recovery each Plaintiff could receive is $0.

This settlement enables the parties to "avoid both the anticipated burdens and expenses in establishing their respective claims and defenses." *Id.* Further litigation, which would include deposition preparation, depositions, and trial, would require those Plaintiffs who are employed to miss valuable time at work. Moreover, this settlement more quickly and adequately compensates the Plaintiffs, who are low-wage workers with limited financial means and families to take care of. This settlement will spare Defendants additional legal fees and expenses, prevent the further accrual of Plaintiffs' attorneys' fees and relieve Defendants of the significant burden of producing certain individuals for depositions.

Both sides faced litigation risks by continuing this litigation. Notably, despite notice being mailed to 172 potential collective members, only 17 Plaintiffs opted in despite a 45-day extension of the notice period. *See* ECF No. 100. Further, Plaintiffs have virtually no records of their alleged overtime hours worked. Although each Plaintiff's recollection of his hours is sufficient to prove the number of overtime hours he worked, the fact finder is not bound by that recollection and could find that Plaintiffs worked fewer hours than they allege. *See Doo Nam Yang v. ACBL Corp.*, 427 F.Supp.2d 327, 335 (S.D.N.Y. 2005) ("Because defendants here did not produce admissible records of the hours plaintiff worked, plaintiff must produce sufficient evidence to show the hours he worked as a matter of just and reasonable inference. Furthermore, it is possible for plaintiff to meet this burden by relying on his recollection alone. . .") (internal quotations and citations omitted). Moreover, Defendants were prepared to offer evidence to challenge the extent of overtime hours alleged by Plaintiffs. By litigating this matter at trial, Defendants risked that a jury would award Plaintiffs 100% liquidated damages, damages under Sections 195(1) and 195(3) of the NYLL, substantial attorneys' fees, and prejudgment interest. The agreed upon settlement allows each side to avoid these risks while also making Plaintiffs whole.

## II.    Service Awards to Alejandro Huggins and Clinton Jack

The parties also ask the Court to approve a $7,500 service award to the original named plaintiff in this case, Alejandro Huggins, and a $5,000 service award to the second named plaintiff Clinton Jack. These service awards are reasonable given the significant contributions Huggins and Jack made to advance the prosecution and resolution of this lawsuit, which, if the Court approves this settlement, will result in awards to 18 individuals.

Courts acknowledge that plaintiffs play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. *See, e.g.*, *Velez v. Majik Cleaning Serv., Inc.*, 2007 WL 7232783 at *7 ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers.") (internal quotation marks and citation omitted). Indeed, Mr. Huggins has asserted a retaliation claim in this litigation based on Defendants' termination of his employment following his

commencement of this lawsuit. Service awards are common in class action cases and serve to "compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff[s]." *Yuzary v. HSBC Bank USA, N.A.*, No. 12 CIV. 3693 PGG, 2013 WL 5492998, at *12 (S.D.N.Y. Oct. 2, 2013).

Courts routinely approve service awards in wage and hour class actions, and often in amounts materially in excess of those requested here. *See, e.g.*, *Flores*, 2014 WL 321831 at *9 ($25,000 to each named plaintiff); *Capsolas v. Pasta Res. Inc.*, No. 10-CV-5595 RLE, 2012 WL 4760910, at *9 (S.D.N.Y. Oct. 5, 2012) ($20,000 and $10,000 for class representatives); *Sewell*, 2012 WL 1320124 at *15 (awards of $10,000 and $15,000); *Reyes v. Altamarea Grp., LLC*, No. 10-CV-6451 RLE, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (awards of $15,000 each for three class representatives); *Johnson v. Brennan*, No. 10 CIV. 4712 CM, 2011 WL 4357376, at *21 (S.D.N.Y. Sept. 16, 2011) (awards of $10,000 to class representatives); *Willix v. Healthfirst, Inc.*, No. 07 CIV. 1143 ENV RER, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (awards of $30,000, $15,000, and $7,500 to class representatives and opt-in plaintiffs); *Duchene v. Michael Cetta, Inc.*, No. 06CIV4576PACGWG, 2009 WL 5841175, at *3 (S.D.N.Y. Sept. 10, 2009) ($25,000 and $10,000).

Here, Alejandro Huggins was the original named plaintiff in this matter, and has assisted counsel in prosecuting this lawsuit for over two and a half years.  During that time, he has spent many hours assisting counsel and participating in this litigation. His contribution to this case includes, but is not limited to:

- Meeting with plaintiffs' counsel when this case began, and assisting in the drafting of the complaint and the subsequent amended complaints;
- Providing documents to counsel that would later be produced in discovery;
- Responding to interrogatories under oath;
- With the assistance of counsel, preparing a declaration for plaintiffs' motion for conditional certification (see ECF No. 63-2);
- Preparing for and sitting for a full-day deposition;
- Always making himself available to respond to questions from his attorneys.

He also endured the risks of having his name attached to a public lawsuit and was allegedly terminated by Defendants for doing so.  Based on Huggins' substantial contributions during this litigation, the parties agree that a $7,500 service award is appropriate.

Clinton Jack has joined this matter as a named plaintiff and assisted in similar ways to Mr. Huggins. Mr. Jack's contribution to this case includes, but is not limited to:

- Speaking with Plaintiffs' counsel on numerous phone calls to provide information relevant to the claims of the collective and his own claims;
- Providing documents to counsel that would later be produced in discovery;
- Responding to interrogatories under oath;
- With the assistance of counsel, preparing a declaration for plaintiffs' motion for conditional certification (see ECF No. 63-3);

4

- Preparing for and sitting for a full-day deposition;
- Always making himself available to respond to questions from his attorneys.

He also endured the risks of having his name attached to a public lawsuit. Based on Jack's substantial contributions during this litigation, the parties agree that a $5,000 service award is appropriate.

### III.    Attorneys' Fees and Costs

Plaintiffs seek attorneys' fees of $83,333.33, or one third of the total settlement amount. Courts regularly approve attorneys' fees of one-third of the settlement amount in FLSA cases. *See Gaspar v. Personal Touch Moving, Inc.*, No. 13-CV-8187, 2015 WL 7871036, at *2 (S.D.N.Y. Dec. 3, 2015) ("Fee awards representing one third of the total recovery are common in this District."); *Najera v. Royal Bedding Co., LLC*, No. 13-CV-1767 NGG MDG, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015) (*citing Palacio v. E*TRADE Fin. Corp.*, No. 10–CV–4030 (LAP)(DCF), 2012 WL 2384419, at *6 (S.D.N.Y. June 22, 2012)) ("one-third contingency fees … are commonly accepted in the Second Circuit in FLSA cases."). In this circuit, a "proper fee request entails submitting contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done." *Lopez v. Nights of Cabiria, LLC*, 96 F.Supp.3d 170, 181 (S.D.N.Y. 2015) (internal quotations and citations omitted).

Plaintiffs' retainer agreement with their counsel provides for a contingency fee of one-third of any settlement reached, exclusive of costs and disbursements. Moreover, Plaintiffs incurred $4,710.44[3] in expenses (which does not take into account photocopying, printing, and travel expenses, or the paralegal work performed on this case by Menken Simpson and Rozger's Office Manager, Edwin Gonzalez). In order to substantiate our requested contingency fee of one-third of the settlement sum, or $83,333.33, plus $4,710.44 in costs, for a total of $88,043.77, upon the Court's request, we will submit for *in camera* review billing records which reflect the attorneys' work over the more than two and a half-year life of this case.

<u>Bruce Menken</u>

Plaintiffs' counsel Bruce Menken has spent 55.4 hours working on this case. He does not have a single billing rate because he represents clients of widely differing socioeconomic status. As was true in this case and a significant majority of wage and hour cases, he performs litigation almost invariably on a contingency basis. With respect to people who can afford his full fee, he currently charges and is paid $650 per hour. This is the hourly rate he commands in the relevant marketplace given his experience and expertise. *See* Exhibit 3, Redacted Menken retainer agreements).

Mr. Menken has been practicing law for over thirty years. After graduating from Brooklyn Law School in 1986, he worked in the non-profit sector for seven years. Since 1993, he has been affiliated with or a partner in various small New York City law firms, primarily representing plaintiffs in employment and civil rights cases. In 1998, along with three other

---

[3] The bulk of Plaintiffs' costs are attributed to the sending of notice in this case following certification of the collective, as well as securing deposition transcripts for the named Plaintiffs Alejandro Huggins and Clinton Jack.

attorneys, Mr. Menken founded what ultimately became Menken Simpson & Rozger LLP ("the firm"). The firm, which currently has three partners and two associates, concentrates its practice in plaintiff-side employment law and civil rights litigation.

In the past seven years, two judges in this district have awarded Mr. Menken a rate of $600 per hour. In 2019, Magistrate Judge Aaron awarded Mr. Menken a $600 hourly rate, noting his "vast experience practicing law and in wage-and-hour cases." *Williams v. Epic Sec. Corp.*, 368 F. Supp. 3d 651, 658 (S.D.N.Y. 2019). In 2015, Magistrate Judge Gold approved a settlement in *Ramos et al. v. Simplex Grinnell LP*, 09 Civ. 0981 (SMG), a wage and hour class action, that provided for a $600 hourly fee for Mr. Menken's work. In 2012, Magistrate Judge Steven M. Gold approved a partial settlement of some of the *Ramos* claims including an attorneys' fee award that provided for a $500 hourly fee for Mr. Menken in 2011 and 2012. Also in 2012, in *Clover v. Shiva Realty of Mulberry, Inc.*, et al., 2011 WL 1832581 (May 13, 2011, S.D.N.Y.), a small multi-plaintiff wage and hour case, District Judge Robert P. Patterson awarded fees to Mr. Menken and a former associate of the firm at the hourly rates of $500 and $300, respectively.

<u>Scott Simpson, Michael Borrelli, and Alexander Coleman</u>

Scott Simpson, a partner of Menken Simpson & Rozger LLP, has spent 49.3 hours working on this case. Mr. Simpson graduated from the University of Michigan Law School in 2008, where he was a Dean's Fellow and a Contributing Editor on the law school's Journal of Law Reform. In 2008, he began his legal career as a criminal defense attorney at The Bronx Defenders, a cutting-edge public defender organization in the South Bronx. In his seven years at the Bronx Defenders, he handled over a thousand criminal cases and tried over 25 cases, including 10 jury trials. In September 2012, he was promoted to supervising criminal defense attorney, where he supervised a team of attorneys handling cases ranging from misdemeanors to serious felonies.

Mr. Simpson joined Beranbaum Menken LLP, Menken Simpson & Rozger LLP's predecessor firm, in October 2015, was elected Partner on January 1, 2018, and became a named partner on March 1, 2021. Since joining the firm, Mr. Simpson has litigated numerous employment, civil rights, and discrimination cases in the Southern District of New York, including *Bahena v. Park Avenue South*, 15-cv-1507 (VSB), a class and collective action on behalf of a group of building superintendents, in which, after prevailing on a contested collective action motion, he obtained $650,000 settlement. In December 2018, Mr. Simpson tried a 25-witness Fair Labor Standards Act collective action case in the SDNY on behalf of a group of security guards which resulted in a verdict of liability and damages for the plaintiffs. In that case, Judge Aron awarded him a $350/hr rate, noting however that most of the work performed in that case was when Ms. Simpson was an associate and charged $350/hr. The New York Comptroller's office approved an hourly rate of $400 for Mr. Simpson nearly two years ago in October 2019, in the case of *Cojocaru and Haber v. CUNY et al.*, USDC/SDNY, No. 19-cv-5428, a gender discrimination case.

Mr. Simpson's hourly rate is $475/hour, a reasonable rate for an attorney with his experience and expertise. *See Sub-Zero, Inc. v. Sub Zero NY Refrigeration & Appliances Servs.,*

*Inc.*, No. 13-CV-2548 KMW JLC, 2014 WL 1303434, at *8 (S.D.N.Y. Apr. 1, 2014) (finding $485 per hour a reasonable hourly rate for law firm partner with 16 years' experience*); 615 Bldg. Co., LLC v. Rudnick*, No. 13 Civ. 215 (GBD) (RLE), 2015 WL 4605655, at *3 (S.D.N.Y. July 31, 2015) (approving partner hourly rates of $316 to $475 as in the "mid-range" of acceptable billing rates in this district); *Glob. Brand Holdings, LLC v. Accessories Direct Int'l USA, Inc.*, No. 17CIV7137LAKSLC, 2020 WL 9762874, at *7 (S.D.N.Y. May 29, 2020) (collecting cases for the proposition that, even in "straightforward breach of contract actions," partner rates in the range of $375 to $650 per hour are reasonable). Recent retainer agreements evidencing Mr. Simpson's 475 hourly rate are attached herein as Exhibit 4.

Michael Borrelli is an experienced litigator whose practice overwhelmingly consists of representing employees in workplace disputes. Since graduating St. John's University School of Law in 2001, Mr. Borrelli has litigated numerous employment disputes, including many wage and hour cases, in State and Federal court. Mr. Borrelli's hourly rate is $400 per hour.

Alexander Coleman is an experienced litigator whose practice overwhelmingly consists of representing employees in workplace disputes. Since graduating *summa cum laude* from American University, Washington College of Law, in 2008, he has tried jury and non-jury cases in both Federal and State court, and has obtained significant verdicts, awards and other equitable relief for his clients, via judgment and settlement. Mr. Coleman, a partner at Borrelli & Associates, joined the Firm in January 2010 after completing a clerkship for The Honorable Jane Marum Roush of the Fairfax County Circuit Court in Fairfax, Virginia. Mr. Coleman's rate is $350 per hour.

Jeffrey Maguire

Former Senior Counsel at Borrelli & Associates Jeffrey Maguire has extensive experience representing and litigating on behalf of employees to protect their rights to fair wages and a fair workplace, including claims involving wage violations and discrimination on behalf of employees in both federal and state court. Through Mr. Maguire's representation, clients have achieved favorable results both in and out of court obtaining settlements or judgments that they deserve. Mr. Maguire has additionally served as collective and class action counsel in cases involving claims for failure to pay minimum wage and overtime in multiple industries. Mr. Maguire served as lead counsel of record in numerous cases. Mr. Maguire's billing rate is $250 per hour.

Brenna Rabinowitz and Frank Tantone

Menken Simpson & Rozger LLP senior associate Brenna Rabinowitz has spent 173.3 hours working on this case. *See* Ex. 2 (Ms. Rabinowitz's time entries are labeled "BR Litigation"). Ms. Rabinowitz, an attorney in her fifth year of practice, has a $350 per hour rate which comports with hourly rates that were already being charged by comparable attorneys in this district a decade ago. *See In re Stock Exchanges Options Trading Antitrust Litig*., No. 99 CIV. 0962(RCC), 2006 WL 3498590, at *10 n.6 (S.D.N.Y. Dec. 4, 2006) (reasonable hourly rates for associate attorneys in the Southern District are between $150 and $350).

Ms. Rabinowitz joined the firm as an associate attorney in 2018. She is a 2016 graduate of the University of Pennsylvania Law School where she was Managing Online Editor of the Journal of Constitutional Law, an Equal Justice Foundation Summer Fellow, and a Dean's Scholar, which earned her a three-year merit-based scholarship. After law school, she worked for a year as an associate in the New York office of Freshfields Bruckhaus Deringer LLP, a prominent multinational law firm, where she worked on complex regulatory matters. Ms. Rabinowitz then clerked for United States District Judge A. Richard Caputo in the Middle District of Pennsylvania, where she worked on numerous matters, including a summary judgment opinion in an employment discrimination case and a First Amendment trial involving termination of a public employee. Since joining Menken Simpson & Rozger LLP's predecessor firm Beranbaum Menken LLP in 2018, Ms. Rabinowitz has worked on dozens of employment cases, where she has been responsible for handling discovery, motions, and pleadings, as well as taking and defending depositions. Ms. Rabinowitz singlehandedly defended the deposition of Alejandro Huggins, one of the two named Plaintiffs in the instant case.

Senior associate Frank Tantone concentrates his practice in labor and employment, discrimination, and commercial litigation. Prior to joining Borrelli & Associates, P.L.L.C., Mr. Tantone was an associate at a Labor & Employment and Commercial Litigation law firm representing employers in the healthcare industry in cases involving claims of discrimination, hostile work environment, and commercial contract issues. Prior to that experience, he worked as an associate at a large law firm with a nationwide practice comprised of insurance defense litigation. Mr. Tantone graduated from St. John's University School of Law in 2016. Mr. Tantone's hourly rate is $250 per hour.

Courts in the Southern District of New York regularly approve of hourly rates of over $300 for associates. *See, e.g.*, *Rubenstein v. Advanced Equities, Inc.*, 2015 WL 585561, at *6 (S.D.N.Y. 2015) (approving a "blended" hourly rate of $350 for associates); *In re AOL Time Warner Shareholder Derivative Litigation*, 2010 WL 363113, at *13 (S.D.N.Y. 2010) (noting that reasonable hourly rates for associates range from $175 to $550). In January 2019, one court in this district found $300 per hour to be a reasonable rate for an associate who graduated law school in 2015. *See Lewis v. American Sugar Refining, Inc.*, 2019 WL 116420, at *3-5 (S.D.N.Y. 2019). The New York Comptroller's office approved an hourly rate of $250 for Ms. Rabinowitz nearly two years ago in October 2019, in the case of *Cojocaru and Haber v. CUNY et al.*, USDC/SDNY, No. 19-cv-5428, a gender discrimination case.

<u>Abeer Memon and Caroline Bell</u>

Former associate at Borrelli & Associates Abeer Memon was admitted to the New York Bar in 2019 after graduating the University of Buckingham, LLB, in 2017. Prior to joining Borrelli & Associates, P.L.L.C., Ms. Memon worked at a leading law firm in Pakistan where she represented individuals in remarkably wide range of civil, corporate and commercial disputes. Ms. Memon's hourly rate is $200 per hour.

Former associate at Borrelli & Associates Caroline Bell was admitted to the Massachusetts bar in 2017 after graduating *cum laude* from the University of Michigan School of Law in 2017. A recipient of the National Association of Women Lawyers Award, Ms. Bell

concentrated her practice in representing employees in discrimination and wage and hour claims. Prior to joining Borrelli & Associates, P.L.L.C., Ms. Bell worked at a large law firm where she represented corporate entities in finance and real estate transactions. During law school, Ms. Bell spent two years investigating and litigating wrongful convictions for the Michigan Innocence Clinic. Ms. Bell's hourly rate is $200 per hour.

Plaintiffs' lodestar is therefore $161,575.50 in fees plus $4,710.44 in expenses, totaling $166,285.94, approximately twice the amount Plaintiffs seek in attorneys' fees and costs. Courts in this district routinely award attorneys' fees based on a percentage, rather than lodestar, method. *See Hyun v. Ippudo USA Holdings*, 2016 WL 1222347, at *2 (S.D.N.Y., 2016) quoting *McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 417, 419 (2d Cir. 2010) ("District courts in this circuit 'may award attorneys' fees in common fund cases under either the lodestar method or the percentage of the fund method.' However, 'the trend in this Circuit is toward the percentage method.'). Given the overall fairness of the settlement and this jurisdiction's routine approval of one-third of a settlement in attorneys' fees, the parties request that the Court award Plaintiffs' counsel $88,043.77.

The parties therefore jointly request that the Court approve the terms of the agreed upon settlement. We thank the Court for its attention to this matter.

Respectfully,

*/s/ Brenna Rabinowitz*
Brenna Rabinowitz
Bruce Menken
MENKEN SIMPSON & ROZGER
LLP
80 Pine St., 33rd Fl.
New York, NY 10005
(212) 509-1616

*/s/ Frank J. Tantone*
Frank J. Tantone
BORRELLI & ASSOCIATES, P.L.L.C.
910 Franklin Avenue, Suite 200
Garden City, NY 11530
(516) 248-5550

*/s/ Joshua A. Druck*
Joshua Druck
GIMIGLIANO MAURIELLO &
MALONEY, P.A.
163 Madison Avenue, Suite 500
P.O. Box 1449
Morristown, NJ
(973) 946-8360